# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 5, 1998

Cecil W. Crowson
Appellate Court Clerk

WILLIAM MICHAEL ANDERTON,    )
    )
    Plaintiff/Appellant,    )    Williamson Chancery
    )    No. 22482
VS.    )
    )    Appeal No.
EVELYN ADELE MORGAN ANDERTON,    )    01A01-9701-CH-00013
    )
    Defendant/Appellee.    )

APPEAL FROM THE CHANCERY COURT
FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

For Plaintiff/Appellant:

Jack Norman, Jr.
Nashville, Tennessee

Thomas F. Bloom
Nashville, Tennessee

For Defendant/Appellee:

Evelyn A. Anderton
Pro Se

## VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This is the second appeal concerning a husband's support obligations following the dissolution of a 23-year marriage. The Chancery Court for Williamson County originally directed the husband to pay $1,731 per month in child support and $5,500 per month in spousal support for five years and then $5,000 per month thereafter. On the first appeal, this court remanded the case to the trial court to revisit the child support and spousal support awards. Even though the trial court concluded that the husband's income had decreased significantly, it increased the husband's child support to $2,000 per month and left its original spousal support order unchanged. It also awarded the wife judgments for a sizeable spousal support arrearage and a nominal child support arrearage. On this appeal, the husband again takes issue with the amount of his spousal support and child support obligations and also insists that he is entitled to retroactive relief on his spousal support arrearage and to the lifting of the injunction with regard to his 401k plan. We vacate the child support and spousal support awards and remand them to the trial court for further consideration consistent with this opinion.

## I.

William Michael Anderton and Evelyn Adele Morgan Anderton were married in October 1973. Their three children were born between 1977 and 1981. Mr. Anderton worked at various jobs during the early years of the marriage and in 1986 became employed by National Health Laboratories, Inc., a company providing laboratory services for physicians. Mr. and Ms. Anderton also started an Amway distributorship in 1975 that eventually became a substantial source of household income. Ms. Anderton did not have outside employment but rather remained at home to care for the children and the household and to manage their Amway distributorship.

National Health Laboratories transferred Mr. Anderton to Nashville in 1991 and gave him a three-year employment contract with a $150,000 fixed annual salary and the possibility of an annual bonus. Mr. Anderton's earnings, including his bonuses, were $160,000 in 1991, $162,000 in 1992, and $170,000 in 1993. When the parties separated in October 1993, Mr. Anderton agreed to pay Ms. Anderton

$6,000 per month to support her and their children. In August 1994, the parties agreed to reduce this obligation to $5,500 per month. In December 1994, National Health Laboratories merged with another company and became Laboratory Corporation of America. Mr. Anderton's compensation plan was altered, and beginning in January 1995, his base salary was reduced from $150,000 to $135,000, while his maximum bonus potential was reduced to $67,500.

Following a bench trial, the trial court filed a memorandum opinion on June 22, 1995. Based on its conclusion that Mr. Anderton's earning potential was in excess of $200,000 per year, the trial court directed him to pay Ms. Anderton $5,500 per month for five years and then $5,000 per month thereafter. Then, based on its conclusion that Mr. Anderton's gross earnings for the prior year had been $170,000, the trial court set his child support at $1,731 per month.

Mr. Anderton appealed to this court, and while the appeal was pending, we permitted Mr. Anderton to introduce post-judgment facts showing that his base salary for 1996 had been reduced to $95,000 and that his annual bonus could not exceed $47,500. We determined that the evidence preponderated against the finding that Mr. Anderton would earn in excess of $200,000 in 1996 and that the calculation of Mr. Anderton's child support obligation was inconsistent with the child support guidelines. Accordingly, we remanded the case to the trial court for reconsideration of the child support and alimony awards. We directed the trial court to determine Mr. Anderton's child support obligation first and then to determine his spousal support obligation in light of his child support obligation and the General Assembly's expressed preference for awarding rehabilitative alimony whenever possible. *See Anderton v. Anderton*, No. 01A01-9510-CH-00489, 1996 WL 274399 (Tenn. Ct. App. May 24, 1996) (No Tenn. R. App. P. 11 application filed).

The trial court conducted another hearing in August 1996 to address the remanded issues as well as Ms. Anderton's petition to hold Mr. Anderton in contempt for failing to make alimony and support payments and Mr. Anderton's petition for a reduction in his support obligations. In a supplemental decree filed on October 18, 1996, the trial court concluded that Mr. Anderton's "earning capacity for 1996 and the foreseeable future" was $142,500 per year. The trial court also increased Mr. Anderton's child support obligation to "the guidelines' presumptive amount of

-3-

$2,000.00 per month." Then, turning to Mr. Anderton's spousal support obligation, the trial court found that Ms. Anderton "will probably become capable of financial self support, but there is a substantial possibility that she will not." Based on this rather ambivalent finding, and after reciting that it had considered all the factors in Tenn. Code Ann. § 36-5-101(d) (Supp. 1997), the trial court declined to alter Mr. Anderton's spousal support obligation. Thus, even though the trial court concluded that Mr. Anderton's annual earnings were almost 30% less than its original finding, the net effect of its decision was to increase Mr. Anderton's combined annual child support and spousal support obligations by over 15%. The trial court also ordered Mr. Anderton to pay Ms. Anderton an additional $23,032.03 for child support and spousal support arrearages.[1]

## II.

### ORDER OF ISSUES IN DIVORCE CASES

The dissolution of a marriage requires the courts to engage in the orderly disentanglement of the parties' personal and financial affairs. Many of the issues that must be addressed during this process are interrelated, and the disposition of earlier issues directly influence the decision on later issues. Accordingly, the parties and the courts should pay careful attention to the order in which the various issues in a divorce case are addressed and decided.

As a general rule, the first issue considered in a divorce case concerns whether either or both parties have demonstrated that they are entitled to a divorce. Thus, at the outset, trial courts should first determine to whom the divorce should be awarded or whether the parties should be declared divorced in accordance with Tenn. Code Ann. § 36-4-129 (1996). Following this decision, trial courts should turn their attention to the custody and visitation arrangements for the children if the parties have minor children entitled to support. Only after these status issues have been decided should trial courts turn their attention to the financial aspects of the divorce decree.

---

[1]The trial court found that Mr. Anderton's spousal support arrearage as of August 21, 1996 was $22,859.03 and that the arrearage on his child support was $173.00.

The trial court's first task following the resolution of the status issues is to identify and distribute the parties' separate property and then to divide their marital property in an equitable manner. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). As part of this process, the trial court should also identify and allocate the parties' separate and marital debts. *See Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996); *Hanover v. Hanover*, 775 S.W.2d 612, 614 (Tenn. Ct. App. 1989). Sorting out the parties' property interests must precede support decisions because the manner in which the separate and marital property is divided can affect later support decisions. *See* Tenn. Code Ann. § 36-5-101(d)(1)(G), -101(d)(1)(H) (Supp. 1997); Tenn. Comp. R. & Regs. r. 1240-2-4-.03(2) (1994);[2] *Ridley v. Ridley*, No. 01A01-9012-CV-00462, at *5 (Tenn. Ct. App. May 10, 1991) (Koch, J., concurring) (No Tenn. R. App. P. 11 application filed).

After the parties' property interests have been addressed, trial courts should then turn their attention to child support. This is precisely what this court directed the trial court to do in its first opinion in this case. *See Anderton v. Anderton*, 1996 WL 274399, at *3. Child support decisions should precede decisions about spousal support because a spouse's ability to pay spousal support may be directly and significantly influenced by the amount of child support he or she has been ordered to pay.

Consideration of spousal support questions should follow the disposition of all the preceding questions. Once a court has determined whether spousal support should be awarded, and if so its nature, amount, and duration, it should, as a final matter, address any request for attorney's fees if such request has been made. Considering requests for attorney's fees in the context of the spousal support award is appropriate because additional awards for attorney's fees are considered a form of support. *See Ford v. Ford*, 952 S.W.2d 824, 830 (Tenn. Ct. App. 1996); *Smith v. Smith*, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995). However, as pointed out by the Tennessee Supreme Court, requests for attorney's fees should be considered only after the court has resolved the issues concerning the parties' property and support. *See Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn. 1991).

---

[2]The determination of an obligor parent's net income under the guidelines may be influenced by income-producing property received as separate property or as part of the division of marital property.

# III.

## THE CHILD SUPPORT AWARDS

We turn first to the manner in which the trial court determined the amount of Mr. Anderton's child support obligation. While Mr. Anderton does not directly challenge the trial court's decision to require him to pay $2,000 per month in child support, he does so indirectly by complaining that the trial court erred by requiring him to pay 90% of his expected gross earnings in child support and spousal support. Because Mr. Anderton's challenge to the combined amount of both awards necessarily includes a challenge to each award separately, we will again scrutinize the trial court's child support award.

In its initial June 1995 order, the trial court set Mr. Anderton's child support at $1,731 per month, even though he had three children and his gross annual income was over $200,000. Both parties conceded on the first appeal that this award was inconsistent with the child support guidelines and that the trial court had made no findings warranting a deviation from the guidelines.[3] Accordingly, this court directed the trial court to reconsider the amount of Mr. Anderton's child support obligation in accordance with the child support guidelines.

Following the remand, the trial court announced in its supplemental decree of October 18, 1996, that it was setting Mr. Anderton's child support "at the guidelines' presumptive amount of $2,000.00 per month." We are at a loss to understand the trial court's reference to the "guidelines' presumptive amount." When the trial court entered its second decree, two of the Andertons' children had not yet reached the age of majority, and Mr. Anderton's gross annual income was $142,500. According to the guidelines, a child support award of $2,000 per month for two minor children would be appropriate for obligor parents with gross earnings of $108,000 per year. Again, the trial court provided no explanation for its decision to depart from the guidelines.

---

[3]An award of $1,731 per month to support three children would be appropriate for obligor spouses with gross monthly earnings of $6,000. At the time of the trial court's initial child support award, Mr. Anderton's effective gross monthly earnings were approximately $17,000.

In a vast majority of cases where child support is an issue, the two most important variables are the number of minor children and the income of the parent who will be required to pay support. Because the number of minor children is generally undisputed, determining the amount of a parent's income becomes the most important element of proof in a child support proceeding. *See Turner v. Turner*, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995). The amount of a parent's income can be determined either by ascertaining the parent's gross income as defined in Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3) (1994) or by ascertaining the parent's net income as defined in Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4).[4]

The guidelines require that income calculations must include bonuses, *see* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a), and that variable income such as bonuses and commissions should be averaged and added to the obligor parent's fixed salary. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(b); *Smith v. Smith*, No. 01A01-9705-CH-00216, 1997 WL 672646, at *2 (Oct. 19, 1997) (No Tenn. R. App. P. 11 application filed); *Mayfield v. Mayfield*, No. 01A01-9611-CV-00501, 1997 WL 210826, at *6 (Tenn. Ct. App. Apr. 30, 1997) (No Tenn. R. App. P. 11 application filed). An obligor parent's efforts to decrease the amount of his or her expected income by claiming that he or she will not receive a bonus are addressed to the trial court's assessment of the parent's credibility. *See Yates v. Yates*, No. 02A01-9706-CH-00122, 1997 WL 746377, at *5 (Tenn. Ct. App. Dec. 4, 1997) (No Tenn. R. App. P. 11 application filed).

Once the parent's income has been determined, the guidelines require the courts to calculate the required amount of support using the percentages provided in the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5). In most circumstances, the result of these calculations becomes the obligor parent's child support obligation. However, a court may deviate from the guidelines if it makes detailed, written findings explaining why the application of the guidelines would be inappropriate and how deviating from the guidelines would be in the child's best interests. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7), -.04(2) (1994).

---

[4]The calculation of net income is relatively simple. Net income equals gross income minus three permissible deductions. These deductions include: (a) FICA, (b) income tax withholdings for single wage earners claiming one withholding allowance, and (c) the amount of child support being paid for other children pursuant to court order. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4).

One ground for deviation specifically recognized in the guidelines involves wealthy parents whose net monthly income exceeds $6,250. On both occasions when the trial court calculated Mr. Anderton's child support obligation, Tenn. Comp. R. & Regs. r. 1240-2-4-.04(3) provided that in the case of wealthy parents, the court must order the child support based on the appropriate percentage of all the obligor parent's net income but that it may fashion alternative payment arrangements for the child support derived from the portion of the net income that exceeds $6,250 per month.[5] The guidelines, like *Nash v. Mulle*, 846 S.W.2d 803, 806 (Tenn. 1993), also provide that permissible alternative payment arrangements may include educational or other trust funds for the benefit of the children.

When we apply these straightforward principles to this case, we can only reach the conclusion that Mr. Anderton's child support obligation has been seriously miscalculated from the beginning. When the trial court first set child support in June 1995, Mr. Anderton's effective net income was approximately $12,025 per month. Based on this amount, the trial court should have set Mr. Anderton's child support for his three minor children at $5,273 per month[6] unless there was some reason to deviate from the child support guidelines. Thus, the trial court's child support award in June 1995 was approximately one-third of the guideline amount.

When the trial court entered its supplemental decree in October 1996, the parties' oldest child had passed the age of majority, leaving two minor children at home. By that time, Mr. Anderton's effective net income had slipped to $8,390 per month. Even with this reduction, the trial court should have set Mr. Anderton's child support for his two minor children at $2,684 per month[7] unless there was some reason to deviate from the child support guidelines. The trial court's child support award was 22% lower than the guideline amount.

---

[5]The Department of Human Services increased the $6,250 ceiling to $10,000 effective October 5, 1997.

[6]In accordance with Tenn. Comp. R. & Regs. r. 1240-2-4-.04(3) as it existed at the time, the trial court could have directed Mr. Anderton to make $2,562 in monthly support payments and to place the remaining $2,711 in an educational fund or other fund for the children's benefit.

[7]In accordance with Tenn. Comp. R. & Regs. r. 1240-2-4-.04(3) as it existed at the time, the trial court could have directed Mr. Anderton to make $2,562 in monthly support payments and to place the remaining $122 in an educational fund or other fund for the children's benefit.

The parties' second child became eighteen in December 1997. Presuming that Mr. Anderton's effective net income has remained constant, his child support obligation should have been reduced to $1,762 per month. Barring any unforeseen reason to extend Mr. Anderton's responsibility to support his youngest child, his obligation to pay child support will terminate in August 1999 when the parties' youngest child reaches the age of eighteen.

The amount of child support required by the guidelines is presumptively correct. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7) (1994). In the absence of any definitive written findings by the trial court setting forth cogent reasons to deviate from the guidelines, Mr. Anderton's child support obligation since June 1995 should have been consistent with the preceding discussion. Since it was not, Mr. Anderton's current child support obligation and the arrearage must again be determined by the trial court. Unless the trial court finds reasons for deviating from the guidelines, it should set Mr. Anderton's current child support obligation in accordance with the child support guidelines. It should then recalculate the amount of the arrearage consistent with Mr. Anderton's actual net income during the relevant periods using the formula required by the guidelines.

## IV.

### THE SPOUSAL SUPPORT AWARD

Mr. Anderton also raises three issues regarding the award for spousal support and the judgment of the spousal support arrearage. He asserts that the trial court erred by setting the amount of his spousal support obligation beyond his ability to pay and by awarding Ms. Anderton long-term rather than rehabilitative spousal support. He also asserts that the trial court should have granted him relief from his alimony obligation from the date of his petition to reduce his alimony. We have determined that the trial court should have awarded Ms. Anderton rehabilitative alimony at an amount less than the amounts in the trial court's June 22, 1995 and October 18, 1996 orders.

### A.

There are no hard and fast rules for spousal support decisions. *See Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *See Herrera v. Herrera*, 944 S.W.2d at 387; *Wilson v. Moore*, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996). The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient. *See Smith v. Smith*, 912 S.W.2d at 160; *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989). The purpose of long-term spousal support, on the other hand, is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *See Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997).

The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). Because trial courts have the prerogative to determine the type of spousal support that best fits the circumstances of the case and may award several different types of support in the same case when the facts warrant it. *See Cheatham v. Cheatham*, No. 01A01-9508-CH-00380, 1997 WL 731784, at *7 (Tenn. Ct. App. Nov. 25, 1997) (No Tenn. R. App. P. 11 application filed).

Even though fault is a relevant consideration when setting spousal support, *see* Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *See Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). The

purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *See Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). While divorced couples often lack sufficient income or assets to enable both of them to retain their pre-divorce standard of living, *see Brown v. Brown*, 913 S.W.2d at 169-70, the obligor spouse may be able to provide some "closing in money" to enable the disadvantaged spouse to approach his or her former financial condition. *See Aaron v. Aaron*, 909 S.W.2d at 411.

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1997). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234.

**B.**

Under the facts of this case, we have determined that Ms. Anderton should receive rehabilitative spousal support. She is currently forty-five years old. She earned a college degree in May 1996 and for many years participated in running a financially successful Amway distributorship. Her health and emotional complaints simply do not rise to the level of seriousness that they prevent her from becoming gainfully employed. After hearing the evidence on remand, the trial court found that Ms. Anderton's "physical limitations and disabilities do not preclude economic rehabilitation." Accordingly, the trial court concluded that she "will probably become capable of financial self support, but there is a substantial possibility that she will not." We find that the evidence preponderates in favor of the trial court's conclusion that Ms. Anderton is capable of financial self support.

We turn next to the issues of Ms. Anderton's needs and the ability of Mr. Anderton to pay spousal support. Mr. Anderton's ability to pay support must be considered in light of the recent decline in his income, his child support obligation, and his variable income represented by his bonus. Without considering his bonus,

Mr. Anderton's net monthly salary is approximately $5,650. If his maximum bonus is factored in, his monthly income is effectively increased by approximately $3,500. His current child support obligation for the parties' remaining minor child is $1,762, but he will have no further obligation to pay child support after August 1999 when his youngest child becomes eighteen years old. In light of these facts, Mr. Anderton is able to pay spousal support.

We have weighed the evidence in light of the factors in Tenn. Code Ann. § 36-5-101(d)(1). In doing so, we attached particular weight to the length of the parties' marriage, the manner in which the trial court divided the marital property, the parties' earning capacity, and their physical and psychological condition. Based on these considerations, we have determined that when the trial court reconsidered Mr. Anderton's spousal support obligation in October 1996, it should have directed Mr. Anderton to pay Ms. Anderton rehabilitative spousal support in the amount of $3,000 per month for ten years. In addition to being prospective, the revised amount of Mr. Anderton's spousal support obligation should relate back, for the purpose of calculating any arrearage that might have accrued, to January 30, 1996 when Mr. Anderton filed his petition to reduce his spousal support obligation because of the decrease in his salary. Of course, either party may petition the trial court for a change in the amount of the spousal support award any time before it expires of its own terms.

## V.

### MR. ANDERTON'S 401K PLAN

Prior to making its initial decision in this case, the trial court entered a temporary restraining order prohibiting Mr. Anderton from disposing of, concealing, transferring, or in any way destroying any of his personal assets, including his 401k plan. After this court remanded the case for further consideration, the trial court declined to rescind the restraining order even though it had awarded the retirement plan to Mr. Anderton as part of the division of the marital property. We find that the trial court's refusal of vacate its restraining order was in error. Accordingly, on

remand the trial court should lift its restraining order with regard to the property awarded to Mr. Anderton as part of the division of the marital property.

## VI.

In summary, we vacate the trial court's child support and spousal support awards and remand them to the trial court for the purpose of calculating Mr. Anderton's obligations in accordance with the child support guidelines and with this opinion. The trial court should also recalculate the arrearages for Mr. Anderton's child support and spousal support and should enter a judgment in Ms. Anderton's favor for these revised arrearages which provides for periodic payments of any balances that may be owed. We tax the costs of this appeal in equal proportions to William Michael Anderton and his surety and to Evelyn Adele Morgan Anderton for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE