McCLUNG v. McCLUNG.—198 S. W. (2d) 820.

Eastern Section. November 13, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

Cates, Fowler, Long & Fowler and W. W. Piper, all of Knoxville, for appellant.

Geo. S. Child, of Knoxville, for appellee.

BURNETT, J. This is a divorce suit. On December 4, 1945, A. J. McClung, appellee, sued Lola McClung, appellant, for divorce on the ground of cruel and inhuman treatment. On December 27, 1945, she answered and filed a cross-bill based on adultery, cruel and inhuman treatment and abandonment. On the hearing his suit was dismissed and her cross-bill sustained on the ground of abandonment only. She was awarded his interest in their furniture and personal property except an automobile which was given him. A house they owned by the entirety was "left as provided by law."

She has appealed and assigned appropriate errors because the Court dismissed her bill as to the charge of adultery and cruel and inhuman treatment, and because the Court refused to grant her alimony (the award of household furniture was said by the Court to be because the parties agreed thereto) and that "this is not a case for the award of alimony."

These parties were married in February, 1929, and lived together in various East Tennessee cities from

that time until a month before the original bill was filed. He is 60 years old and she is 43 years old. They have no children. She has worked for many years in a Knoxville bank. His employment has been here and there—never particularly regular or steady. During a great portion of their married life she has had to foot the bills or a large portion thereof for their living expenses. She is a devout christian. He is not.

During the last seven years of their married life he took frequent trips to surrounding towns telling his wife he was going on business. Either through intuition or his lack of sexual ardor she became suspicious that these trips were not business trips but were to meet and be with another woman. Her suspicions being aroused she checked his movements at various places and finally in July 1945 caught him in a hotel room at 10 o'clock at night with a strange woman partially dressed. This occurrence took place in a town fifty miles away from his home. The strange woman hastily dressed and left. The parties herein remained at the hotel, in separate rooms, the remainder of the night returning to Knoxville next day.

He was forgiven this transgression and the parties again resumed marital relations. She says she forgave him because he had sinned and she thought that by forgiving him she might be a means of making a christian out of him. Since the beginning of the world people have frequently wondered why such and such a woman put up with such and such a man. There have been various reasons given—more often no reason is given. Why they do we will not attempt to say. Be this as it may, the bedroom scene was condoned by their resumption of marital relations and cannot now be the basis of a divorce for adultery.

In 1943 the appellant purchased a home in Knoxville. The deed to this property was made to the appellant, she paying the down payment. They jointly signed a note and trust deed for deferred payments which along with taxes and upkeep were largely paid out of rents received from the portion of the house not occupied by these parties. These rents were not enough to pay all the necessary payments and the parties herein pooled their earnings and made up the difference. He has contributed about equal amount to that contributed by his wife for these payments.

Within sixty days after this bedroom incident and after the parties had resumed marital relations she deeded the home to a third party who in turn deeded it to the parties herein by the entirety.

She, in an apparent effort to drive the bedroom woman away from her husband, conducted an aggressive campaign to find out who the woman was. She became convinced that it was an unnamed married woman in the town where they were found in bed. She approached this unnamed woman's husband and employer and made accusations, etc., in an effort to frighten her away. Under this record she was mistaken in her identity of this woman. It is proper to say that as a basis for this suspicion the appellee kept his bank account in this town 50 miles away from his home and it was in this bank that the accused woman worked. The appellant was sure she was the woman in the hotel because of her striking physical resemblance. As a result of this campaign a very reputable and fine lawyer was employed by this unnamed woman to stop these alleged unjust accusations. This lawyer contacted the appellee herein but was unable to get the appellant to see him. Within a few days after this lawyer had come to Knoxville to see these par-

ties, the husband, appellee, left his wife, appellant, and moved in another room of the house and soon thereafter filed his bill herein.

We think that viewing this man's actions over a period of years they clearly justify his wife being granted a divorce on the ground of cruel and inhuman treatment. We can hardly imagine any set of acts that would tend to destroy a woman's health and peace of mind more than the suspicions this man created which were afterwards proven to be so. His demeanor towards women was conducive to this suspicion. Leaving his home and his wife on week ends purportedly on business cast suspicion on his trip.

A human can take physical abuse or cruelty and get over it soon. Mental cruelty is often of far greater harm and longer lasting.

In view of the facts of this case as herein detailed we feel that it is a proper case for alimony. The equity of the husband in the home should be given the wife as alimony in addition to the personal property awarded her. It was the duty of this man to support his wife. Alimony is to be allowed her as a consequence of this duty. In allowing alimony the courts do not do so as a penal measure but out of the common-law duty of the husband to the wife. Toncray v. Toncray, 123 Tenn. 476, 494, 131 S. W. 977, 34 L. R. A., N. S., 1106, Ann. Cas. 1912C, 284. The courts do and should consider the conduct of the husband in fixing alimony—it is his conduct that gives her the right to a divorce.

"The husband owes the duty to his wife of rendering to her suitable support without reference to her financial condition. He ought not to be allowed to escape the performance of that duty by affording his wife cause for separation and placing her in a financial situation worse

than it was before his misconduct brought about a legal separation.'' Williams v. Williams, 146 Tenn. 38, 44, 236 S. W. 938, 940.

A decree will be entered modifying the decree below as directed in this opinion. The costs here are adjudged against the appellee and his sureties on his bond as given below.