# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**December 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

JONI SMART HOLT,     )
           )
  Plaintiff/Appellee,    )
           ) Sumner Chancery
           ) No. 93D-485
VS.         )
           ) Appeal No.
           ) 01A01-9609-CH-00423
JACK SANDERS HOLT,    )
           )
  Defendant/Appellant.   )

APPEAL FROM THE CHANCERY COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE TOM E. GRAY, CHANCELLOR

For the Plaintiff/Appellee:     For the Defendant/Appellant:

Rose Palermo        Mary Arline Evans
Nashville, Tennessee      Nashville, Tennessee

## AFFIRMED IN PART; MODIFIED IN PART; AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the dissolution of a nineteen-year marriage. The wife filed suit for divorce in the Chancery Court for Sumner County but then suspended the proceedings while the parties attempted to reconcile. The efforts proved fruitless, and, following a bench trial, the trial court granted the wife a divorce on the grounds of adultery. The trial court also awarded the wife custody of the parties' two children, divided the marital estate, and awarded the wife spousal support as well as additional funds for her legal expenses. The husband takes issue on this appeal with the financial aspects of the divorce decree, including the division of the marital property, the long-term spousal support award, and the additional award to defray the wife's legal expenses at trial. While the trial court properly divided the marital property and awarded the wife funds for her legal expenses at trial, we modify the spousal support award to provide for rehabilitative alimony and for reduced long-term spousal support.

## I.

Jack Sanders Holt and Joni Smart Holt were married in Nashville in June 1976. Ms. Holt was twenty-two years old at the time; while Mr. Holt was twenty-one. Their first child was born in January 1981. In August 1989 their second child was born with serious health problems. The boy underwent two heart surgeries before his second birthday and has also had several less severe surgeries on his ears.

Mr. Holt was employed as the sales manager for Sanders Manufacturing Company throughout most of the marriage. Ms. Holt also worked during most of the marriage but primarily during the early years. She was working as a secretary-receptionist in a Nashville law office at the time of the marriage and later worked in the child support division of the circuit court clerk's office. She stopped working full-time after her first child was born but continued to work on a part-time basis at a local department store as a fragrance and cosmetic model. She also worked for a short time at a day-care facility and for another retailer during the holiday season. Ms. Holt stopped working completely after the birth of the parties' second child.

The parties continually disagreed over whether Ms. Holt should return to work. Their relationship became increasingly strained as the years passed. They tried

marital counseling in late 1988, but Mr. Holt eventually refused to continue the counseling. During this time, Ms. Holt began to suspect that Mr. Holt was having an extramarital affair with a co-worker. The parties separated from February through April 1993. While their relationship seemed to improve after Mr. Holt returned home, Ms. Holt filed for divorce in October 1993. Following another unsuccessful reconciliation attempt, Ms. Holt moved to set aside the order of reconciliation and later filed an amended divorce complaint.

During the trial in January 1996, Mr. Holt conceded that he had committed adultery. In an April 8, 1996 order, the trial court granted Ms. Holt a divorce based on Mr. Holt's adultery. The trial court gave Ms. Holt custody of the parties' children and ordered Mr. Holt to pay $1,494 per month in child support. The trial court awarded Ms. Holt fifty-four percent of the marital estate, including the marital home, and awarded Mr. Holt the remaining property, including his stock in Sanders Manufacturing Company and the parties' interest in the Danwood Apartments. Mr. Holt was ordered to pay Ms. Holt alimony in the amount of $1,200 per month until her death or remarriage and an additional $5,612.75 to defray her legal expenses.

## II.
### THE DIVISION OF THE MARITAL ESTATE

We turn first to the manner in which the trial court divided the marital estate. Mr. Holt insists that the division of the marital property is inequitable because Ms. Holt received a larger portion of the estate and because the trial court overvalued the Danwood Apartments which were awarded to him. We conclude that the manner in which the trial court divided the marital property is equitable.

### A.
### The Valuation of the Interest in the Danwood Apartments

The parties owned a ten percent interest in the Danwood Apartments, a twelve-unit apartment building located on Nashville's Music Row. At trial, they introduced evidence consisting of a 1986 financial statement valuing the entire apartment building at $300,000, another 1988 financial statement valuing the building at $350,000, subject to a $185,000 mortgage, and a 1995 statement valuing their ten

percent interest at $10,000.[1] The trial court, adopting the values in the 1988 financial statement, found that the value of the parties' interest in the apartment was $16,500. Mr. Holt insists that the trial court should have adopted the 1995 valuation.

Valuing marital property is not an exact science. It is a question of fact that depends upon the proof offered by the parties. The parties have the burden of presenting competent valuation evidence, and they are bound by the evidence they present. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). In the face of conflicting valuation evidence, trial courts may place a value on the property that is within the range of the values presented by the evidence. *See Brock v. Brock,* 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996). Like other fact questions, a trial court's decision concerning the valuation of marital property is entitled to great weight on appeal and will not be second-guessed unless the evidence preponderates otherwise. *See Brock v. Brock*, 941 S.W.2d at 902; *Smith v. Smith*, 912 S.W.2d 155, 157(Tenn. Ct. App. 1995).

The trial court's valuation of the parties' interest in the apartment building is within the range of the competent proof. We find no basis for second-guessing the trial court's decision to base its valuation of this property on the parties' 1988 financial statement. In the face of contradictory evidence, the trial court's valuation is consistent with the nature of the property and its location.

## B.
## The Division of the Marital Estate

Mr. Holt also asserts that the overall result of the division of the marital estate is inequitable because Ms. Holt received a disproportionately larger share of their property. He argues that the size of the marital property award indicates that the trial court must have considered the relative fault of the parties, and that the size of Ms. Holt's share of the marital property will be a disincentive for her to attempt to rehabilitate herself. We have determined that the manner in which the trial court allocated the marital property was essentially equitable.

---

[1]The value of the parties' ten percent interest was $28,500, while their share of the mortgage debt was $18,500. The value of their interest less their share of the mortgage debt is $10,000.

Trial courts have broad discretion in dividing marital property and allocating marital debt. *See Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Koch v. Koch,* 874 S.W.2d 571, 579 (Tenn. Ct. App. 1993). We customarily accord the trial court's decisions great weight on appeal, *see Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996), and we will decline to alter them unless they are inconsistent with the factors in Tenn. Code Ann. §36-4-121(c) (1996) or are unsupported by the evidence. *See Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989).

Trial courts must distribute marital property equitably. *See* Tenn. Code Ann. § 36-4-121(a)(1). However, the distribution need not be mathematically equal to be equitable. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988); *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). In addition, each party need not receive a share of each piece of marital property in order for the division to be equitable. *See Brown v. Brown*, 913 S.W.2d at 168.

As is usual in cases of this sort, the parties placed different values on their marital property. The most significant differences involve the value of their interest in the Danwood Apartments, the value of the marital home, and the value of the furnishings in the marital home. Mr. Holt valued the entire marital estate at approximately $407,126; while Ms. Holt valued it at $367,576. The trial court determined the value of part, but not all, of the property. Ms. Holt received the marital home and furnishings, a mower, two individual retirement accounts, and the contents of her checking account. Depending on which party's values are used, Ms. Holt's share of the marital estate was worth between $199,287 (or 54.2% of the marital estate according to her valuation) and $240,087 (or 58.9% of the marital estate according to Mr. Holt's valuation).

We have evaluated the overall effect of the trial court's division of the marital estate in light of the factors in Tenn. Code Ann. § 36-4-121(c) and have determined that the division is equitable. The parties were married for nineteen years. During this time, Ms. Holt focused much of her attention on her family and thus her ability to earn income and acquire capital assets will not be as great as Mr. Holt's. Ms.

Holt's employment prospects are also more limited than Mr. Holt's who has remained in the full-time work force throughout the marriage. Accordingly, we have no basis to differ with the trial court's division of the marital estate.

### III.

#### THE AWARD FOR SPOUSAL SUPPORT

Mr. Holt also takes issue with the trial court's decision to award Ms. Holt $1,200 per month as spousal support until her death or remarriage. He asserts that Tennessee's divorce statutes contain a preference for rehabilitative support and that Ms. Holt should receive rehabilitative support rather than long-term support. We agree Ms. Holt's spousal support should be structured to provide her an incentive to become more self-sufficient.

#### A.

Trial courts have broad discretion in setting the amount and duration of spousal support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). These decisions should be guided by the particular facts of each case and by a careful balancing of the factors contained in Tenn. Code Ann. §36-5-101(d)(1) (Supp. 1997). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). This court customarily declines to second-guess a trial court's decision concerning spousal support unless the decision is not supported by the evidence or is contrary to public policy embodied in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Even though fault is a relevant consideration when setting spousal support, these decisions are not intended to be punitive. *See Brown v. Brown*, 913 S.W.2d at 169; *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). Rather, they are intended to assist the economically disadvantaged spouse to become self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *See Brown v. Brown*, 913 S.W.2d at 169-70. The principal factors influencing spousal support decisions include the need of the

recipient spouse and the ability of the obligor spouse to pay. *See Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996); *Hawkins v. Hawkins*, 883 S.W.2d at 625.

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative support, as opposed to long-term support. *See Wilson v. Moore*, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996). This preference does not completely displace other forms of spousal support. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). Trial courts continue to have the prerogative to determine which type of spousal support best fits the facts of each particular case and may, when appropriate, award a spouse several different types of support.

### B.

Ms. Holt is currently forty-three years old and is in relatively good health. She has a high school diploma and has completed one year of college. She worked steadily before and during the early years of the marriage and demonstrated that she could find employment when she chose to work. She elected not to work in order to care for the parties' children while they were younger, but these children are now seventeen and nine years old. Her younger son's medical problems have abated significantly, and the boy is now actively involved in sports and other extracurricular activities.

Based on our examination of the record, we have determined that Ms. Holt is a candidate for rehabilitative support in order to enable her to become more self-sufficient. We have also determined that she should receive some "closing in money," *Aaron v. Aaron*, 909 S.W.2d at 411, over a longer term. Accordingly, we modify the trial court's spousal support award to provide that Mr. Holt should continue to pay Ms. Holt $1,200 per month until December 31, 1999. Thereafter, the amount of Mr. Holt's spousal support shall be reduced to $800 per month unless Ms. Holt presents proof satisfactory to the trial court that she has made serious, good faith efforts to rehabilitate herself and that her ability to earn income and to accumulate capital assets has not appreciably improved.

### IV.

## THE AWARD FOR LEGAL EXPENSES

We turn finally to the question of Ms. Holt's legal expenses. For his part, Mr. Holt asserts that the trial court should not have required him to pay Ms. Holt an additional $5,612.75. For her part, Ms. Holt insists that this court should require Mr. Holt to pay the legal expenses she incurred on this appeal. We have determined that the trial court properly awarded Ms. Holt the legal expenses she incurred at trial but that Ms. Holt should be responsible for her own legal expenses for this appeal.

Awards for legal expenses in a divorce proceeding are considered to be awards for additional support. *See Smith v. Smith*, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995); *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). They are warranted when an economically disadvantaged spouse lacks the funds to pay his or her legal expenses. *See Herrera v. Herrera*, 944 S.W.2d at 390; *Brown v. Brown*, 913 S.W.2d at 170. These awards, like other decisions in divorce proceedings, are discretionary with the trial court, and so the appellate courts will decline to interfere with the trial court's decision unless the trial court has abused its discretion. *See Garfinkel v. Garfinkel*, 945 S.W.2d at 748; *Smith v. Smith*, 912 S.W.2d at 161.

Ms. Holt will be returning to employment at the age of forty-three after having been away from the full-time job market for approximately twenty years. The marital property she received is not liquid, and she will be required to use these assets to support her as the years go by. Accordingly, we concur with the trial court's decision to require Mr. Holt to pay her an additional $5,612.75 to help defray the legal expenses she incurred at trial. We have determined, however, that Mr. Holt should not be required to pay any more of Ms. Holt's legal expenses and accordingly deny her request for an additional award for her legal expenses on appeal.

## V.

We affirm the judgment as modified herein and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Jack Sanders Holt and his surety and to Joni Smart Holt for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE