**IN THE COURT OF APPEALS OF TENNESSEE**
**AT JACKSON**

PHILLIP WAYNE CROCKER, )
)
    Plaintiff/Appellee, ) Madison Chancery No. 53013
)
VS. ) Appeal No. 02A01-9801-CH-00014
)
PATRICIA L. TAYLOR CROCKER, )
)
    Defendant/Appellant. )

**FILED**

April 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE
THE HONORABLE JOE C. MORRIS, CHANCELLOR

**JAMES F. (TIM) SCHAEFFER**
Memphis, Tennessee
Attorney for Appellant

**BENJAMIN M. HUEY**
**JASON C. SCOTT**
**FLIPPIN, COLLINS, HUEY & WEBB, P.L.L.C.**
Milan, Tennessee
Attorneys for Appellee

**AFFIRMED AS MODIFIED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

    Patricia Louise Taylor Crocker ("Wife or "Appellant") appeals the judgment of the

trial court which granted divorce to Wife and Phillip Wayne Crocker ("Husband" or "Appellee"); awarded Wife rehabilitative alimony in the amount of $1,000.00 per month for a period of twenty-four (24) months; awarded Wife court costs and attorney's fees as alimony *in solido* in the amount of $4,000.00; awarded each party the separate property he/she respectively owned before marriage or inherited during marriage; and divided the property acquired during the marriage as follows:

Wife: 1. Real property located at Three Way in Madison County upon which Wife's dancing school business was located.
   Value $53,500 Debt $37,500
Husband: 1. 33.5-acre Gibson County farm.
   Value $25,800 Debt $0
   2. 115.5-acre Gibson County farm
   Value $95,200 Debt $95,000

## I. Factual and Procedural History

Husband and Wife were married in August of 1991. They first met in January of 1990 when Husband came to a dance class at Wife's dancing school. This marriage was marriage number three for Wife and marriage number four for Husband.

Prior to this marriage, Wife was receiving alimony in the amount of $1,200.00 per month for life (which was to increase to $2,000.00 per month for life by the year 2000), medical expenses, and medical insurance coverage from her former husband. She was also named as beneficiary on a life insurance policy. All of these things terminated upon Wife's remarriage pursuant to Wife's property settlement agreement with former husband. Wife contended she gave up these things at Husband's reassurance that this was going to be his last marriage and that everything would be all right. Husband contended Wife pressed for marriage telling him her mother would be opposed to the two of them living together without marriage.

At the time of marriage, Wife owned her own home, an automobile, a boat, a diamond cluster ring, and had savings in the bank and an inheritance of $12,200.00. During the marriage, Wife's home appreciated in value in the amount of $17,400.00. At the time of marriage Husband owned his own home, and 21.5 acres of farm land. While the

2

parties were married, Husband inherited numerous tracts of land from his father. Husband's property appreciated in value during the marriage. At trial, Wife asserted that the appreciation in value was the sum of $178,900.00. The trial court awarded each party their respective appreciation in value.

During the six year marriage, Husband spent most of his time farming while Wife ran the dance studio located at the Three-Way property. There was an initial first mortgage on the Three-way property in the amount of $58,400.00. Husband paid that note down to $37,500.00 using his own funds. In addition he took out another loan in his name to pay $25,000.00 toward renovation of that property. Wife testified that during the marriage she made financial contributions from her own funds for use at the dance studio in the amount of $93,779.00. Wife also testified that the business school showed considerable operating losses from which Husband benefitted by offsetting such losses against his gains for income tax savings.

Prior to the divorce the school business deteriorated drastically. Wife testified that this was due to Husband spreading misinformation and misinforming parents of students about details. Husband testified that he not only invested his money, but also his time in the studio. Husband and others testified that Wife would humiliate and embarrass Husband in front of the school customers. Husband asserted that such unprofessional behavior caused the decline of the business.

Wife's health declined during the marriage. She developed a thyroid problem, severe female problems, neck problems, dental problems, and mental problems. She testified that she lost the ability to work at anything more than a minimum wage grocery type job and she was unable to rehabilitate herself because she lost her ability to perform in school.

After hearing all of the evidence in this matter, the trial court granted a divorce to both parties, ordered Husband to pay alimony to Wife in the amount of $1,000.00 per month for a period of 24 months, order Husband to pay court costs and Wife's attorney

3

fees as alimony *in solido* in the amount of $4,000.00 and awarded to each party respectively all property he/she owned prior to marriage and all property inherited during the course of the marriage. The trial court awarded to Wife the real property located at Three Way in Madison County upon which Wife's dancing school business was located, and awarded to Husband the 33.5-acre Gibson County farm and 115.5-acre Gibson County farm. This appeal by Wife followed.

## II. Property Division

Both parties owned real property at the time of their marriage. Wife owned a residence which was valued at $57,500.00 at the time of marriage. This property appreciated $17,400.00 during the marriage. The trial court awarded this property to Wife as her separate property, along with all appreciation in value. Husband owned a house on one acre of land, and 21.5 acres of farm land at the time of marriage. These properties appreciated $16,400.00 and $7,200.00 respectively during the marriage. Husband also purchased an 84 acre tract of land while the parties were separated. This property did not appreciate in value. Husband was awarded these properties as his separate property along with all appreciation in value.

While the parties were married, Husband inherited numerous tracts of land from his father. Wife argued to the trial court that these properties appreciated in value in the amount of $155,300. That figure is based upon the tax assessment records from 1994, the year Husband's father passed away, and the most recent tax assessment records from 1996. Husband contended that there was no appreciation in value of these properties as his father's estate was not closed until a few months before trial, and the property value at the time of inheritance is measured at the time the estate is closed and not at the time of death. The trial court awarded these properties to Husband as his separate property along with any appreciation in value.

During the marriage, the parties purchased three parcels of property. Husband

4

purchased a 33.5 acre tract of land from his aunt, valued at $25,800.00 at the time of purchase, with his separate funds and titled the tract jointly. Husband also purchased a 115.5 acre tract of land which was titled in the name of Husband and Wife and which was appraised at $95,000.00. At the time of trial, there was no equity in this land. The parties also acquired property located at Three Way in Madison County upon which Wife located her dancing school. The property was valued at $53,500.00, with debt of $37,500.00, resulting in a net value of $16,000.00. The trial court awarded the two parcels of farm land to Husband, and the Three Way property and dance school to Wife.

Wife contends that the trial court failed by a good measure to award her a fair and reasonable division of the marital property. Wife argues that she should have been awarded more than the dance studio property. She claims she is entitled to a share of the appreciation in Husband's separate property. Wife asserts that Husband's separate property appreciated in value $178,900.00 during the marriage. She contends that she contributed to Husband's estate by generating tax losses enabling Husband to profit by offsetting her losses against his income. Wife also contends Husband contributed to the failure of her enterprise.

Trial courts have broad discretion in dividing the marital estate, and their decisions are afforded great weight on appeal. Fisher v. Fisher, 648 S.W.2d 244, 246 (1983). Moreover, findings of the trial court are accompanied by a presumption of correctness unless the evidence preponderates otherwise. Barnhill v. Barnhill, 826 S.W.2d 443, 459 (Tenn.App. 1991). A trial court's division of property need not be equal to be equitable, Batson v. Batson, 769 S.W.2d 849, 859 (Tenn.App. 1986), and as a general matter, courts will evaluate the fairness of the property division by its final results. Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn.App. 1990).

The division of marital property, while not perfectly equal, is not inequitable. Husband was a farmer and Wife was not involved in his farming activities. Wife ran the dance school. It was logical for the trial court to award the farm land to Husband and the

5

dance school property to Wife. The net value of the marital property awarded to Wife was $16,000.00, while the net value of the marital property awarded to Husband was $25,800.00.

Tennessee Code Annotated §36-4-121(c) sets forth factors which are intended to guide the court in making an equitable distribution of marital property. This statute provides in pertinent part:

> **§36-4-121. Distribution of marital property. -**
> (c) In making an equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the martial or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (10) Such other factors as are necessary to consider the equities between the parties.

There was testimony that Husband used his separate funds to purchase the 33.5 acre property. Under §36-4-121(c)(5), this was a valid factor for the trial court to consider in making an equitable division. The trial court's division of marital property is afforded great weight on appeal, and we find that the evidence does not preponderate against the court's division of marital property.

Wife contends that the trial court erred in failing to award Wife any division of Husband's separate property and any part of its appreciation in value. The appreciation in the value of Husband's separate property was determined by comparing the tax assessment value placed upon the property in the year Husband acquired the property to the tax assessment value placed upon the property at the time of divorce. There was no evidence presented of any improvements to the inherited property. It appears the property's appreciation was due to inflation and a general increase in property values over that period of time.

An increase in the value of separate property constitutes marital property if (1) it

6

occurred during the marriage and (2) the non-owner spouse made some substantial contribution to the preservation and appreciation of the separate property. Cohen v. Cohen, 937 S.W.2d 823,833 (Tenn. 1996). In the case of Harrison v. Harrison, 912 S.W.2d 124 (Tenn. 1995), the husband had an interest in a tract of farmland which was found to be his separate property. The 45.5-acre tract of farmland increased in value from $7,000 at the time of the parties marriage to $1,361,750 at the time of their divorce. The sole cause of the appreciation in value was the construction of a interstate highway across a portion of the larger 125-acre tract. The Tennessee Supreme Court found that, as the sole cause of the appreciation in value was the construction of the interstate, the wife's activities did not substantially contribute to the preservation and appreciation in value of the property. Id. at 127. The increase in value remained the separate property of the husband. Id.

Wife contends that during the five year period of the marriage, Wife sustained total losses in the operation of her dance school in the amount of $215,129.00. During that same period, Husband enjoyed net income of $205,892.00. Assuming Husband was in an average tax bracket of 35%, Wife alleges he profited approximately $75,000.00 by the filing of joint returns enabling him to take her losses as deductions against his income. Wife contends that by generating tax losses, she directly contributed to Husband's net worth over the marriage in the sum of $75,000.00. Essentially, Wife is arguing that by generating business losses she has substantially contributed to the preservation and appreciation in value of Husband's separate property.

While Wife's business losses may have contributed to Husband's net worth, that does not mean that Wife's business losses substantially contributed to the preservation and appreciation in value of Husband's separate property. This case bears similarity to Harrison v. Harrison in that the appreciation in value of the property was due to outside forces and wholly unrelated to actions taken by either of the parties.

The trial court awarded each party the appreciation in value in their separate and

inherited properties. The trial court specifically found that neither party contributed to any appreciation in value of their separate properties. Determining whether a spouse has contributed substantially to the preservation and appreciation of the other spouse's separate property is a question of fact. Brown v. Brown, 913 S.W.2d 163, 167 (Tenn.App. 1994). The evidence does not preponderate against the trial court's findings. We hold that the trial court did not err in awarding each party their respective separate and inherited property, including all appreciation in value.

### III. Alimony

Shortly after the filing of the divorce and upon a hearing, the trial court awarded Wife $2,000.00 per month as alimony pendente lite, payable until the anticipated trial date on July 22, 1997. Before the scheduled trial date, Wife moved for a continuance due to her illness. Upon hearing on said motion, the case was continued to September 24, 1997. At that same hearing, Husband made an oral motion to reduce alimony pendente lite and the court ordered alimony be reduced from $2,000.00 to $1,000.00 per month. No order was entered on that ruling at that time.

At the final hearing of divorce in September, 1997, the trial court awarded $1,000.00 as rehabilitative alimony payable for a period of two years. After the final divorce hearing, the trial court set aside the order requiring alimony pendente lite be reduced from $2,000.00 to $1,000.00. The chancellor held that since the earlier motion to reduce had not been in writing and no prior notice had ben given to Wife, the $2,000.00 per month pendente lite award was reinstated and Husband was ordered to pay the amount not previously paid between the date of the order and the date of final divorce.

Wife asserts that the amount of rehabilitative alimony awarded to her in the final divorce was woefully inadequate. It is argued that her rehabilitative alimony should be at least $4,000.00 per month and for a period of at least three years. Wife contends that the trial court erred in setting alimony at $1,000.00 per month in the final decree of divorce

because the amount of $1,000.00 was "in the air" due to the erroneous reduction in alimony.

A spouse who is economically disadvantaged, relative to the other spouse, should be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Tenn. Code Ann. §36-5-101(d)(1). Factors to be considered in granting an order of support are set forth in Tenn. Code Ann. §36-5-101(d)(1).

**36-5-101. Decree for support of spouse and children - Modification - Delinquencies. -**
(d)(1) . . .In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in § 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Trial courts have broad discretion concerning the amount and duration of spousal

support. Jones v. Jones, 784 S.W.2d 349, 352 (Tenn.App. 1989). These determinations are factually driven and require a balancing of the factors contained in Tenn. Code Ann. §36-5-101(d). As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion. Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn.App. 1986).

The evidence shows that Wife has monthly living expenses in the amount of $3,450.00 and a monthly income of $730.00. Based upon federal income tax returns, for the five year period of 1992 through 1996, Wife sustained losses totaling $215,129.00 while Husband enjoyed a profit of $205,892.00. Husband also enjoyed substantial tax savings resulting from offsetting Wife's losses against his gains. The value of all real property awarded to Wife was $90,400.00 while the value of all real property awarded to Husband was $507,300.00.

There is evidence in the record that, during the marriage of the parties, Wife developed numerous health problems. She developed a thyroid problem, severe female problems, neck problems, dental problems, and mental problems and will be on medication for the rest of her life. Wife testified that these problems would keep her from working until they were corrected or treated further. She testified that she lost the ability to work at anything more than a minimum wage "grocery type" job in the future.

Need and the ability to pay are the critical factors in setting the amount of an alimony award. Smith v. Smith, 912 S.W.2d 155, 159 (Tenn.App.1995); Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn.App.1984). The propriety of awarding alimony as well as the adequacy of the amount awarded depends upon the unique facts of each case. Butler v. Butler, 680 S.W.2d 467, 470 (Tenn.App.1984). In Lancaster, this Court stated:

> Alimony is not and never has been intended by our legislature to be punitive. See McClung v. McClung, 29 Tenn.App. 580, 198 S.W.2d 820, 822 (1947). Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan." H. Clark, Law of Domestic Relations § 14.9(4) (1968).

Lancaster, 671 S.W.2d at 503.

10

Taking into consideration the standard of living established by the parties during the marriage, Wife's monthly living expenses, Wife's age and physical condition, we find that the trial court's award of alimony in the amount of $1,000.00 per month for a period of 24 months is not adequate to care for Wife's needs after divorce. As the trial court abused its discretion in setting the monthly amount of alimony at $1,000.00, it becomes our duty, on this appeal, to award to Wife the measure of alimony which, in our opinion, should have been awarded by the Chancellor in the exercise of his sound discretion. Mount v. Mount, 326 S.W.2d 493, 498 (Tenn.App. 1959).

Based upon Wife's need and upon Husband's income and the considerable value of his separate property, the award of rehabilitative alimony to Wife shall be the sum of $2,000.00 per month for a period of 48 months. We find Husband has the ability to pay said amount and said amount will more fairly meet Wife's post-divorce needs.

The trial court also ordered Husband to pay court costs and Wife's attorneys' fees as alimony *in solido* in the sum of $4,000.00. In determining whether to award attorneys' fees, the trial court should again consider the relevant factors in Tenn. Code Ann. § 36-5-101(d)(1). Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn.App.1995). When one party demonstrates that it is financially unable to afford counsel, and when the other party has the ability to pay, the court may properly order the other party to pay attorney's fees. Id. An award of attorneys' fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. Id. A spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorneys' fees and expenses. See Duncan v. Duncan, 686 S.W.2d 568 (Tenn.App.1984).

Wife contends she should be awarded the sum of $75,000.00 as alimony *in solido* which could be made payable *in futuro*. Wife argues this amount of money was actually "earned" by Wife's dance studio losses during the marriage which in turn benefitted Husband by reducing his tax liability. The fact that Wife made this contribution to the

11

marriage and to Husband's net worth has been considered by this Court in increasing the award of rehabilitative alimony to Wife. The trial court awarded Wife the amount of $4,000.00 as alimony *in solido* to cover Wife's attorneys' fees. Wife testified as to her inability to pay her legal expenses arising from this divorce. The evidence does not preponderate against the trial court's award of $4,000.00 to Wife as alimony *in solido* and we will not disturb this award on appeal.

## IV. Conclusion

The judgment of the trial court is hereby affirmed as modified, with rehabilitative alimony being increased from $1,000.00 per month for a period of 24 months to $2,000.00 per month for a period of 48 months. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____

12

CRAWFORD, P.J., W.S.


_____

FARMER, J.