IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 22, 2006 Session

## JEANNE L. SCHUETT v. EGON HORST SCHUETT, JR.

An Appeal from the Circuit Court for Shelby County
No. CT-00-1433-02     Rita L. Stotts, Judge

No. W2005-02482-COA-R3-CV - Filed December 4, 2006

This is the second appeal of a divorce case involving alimony and child support. In the original divorce proceeding, we reversed the trial court's holding that the increase in value of the wife's inheritance was separate property, as well as its award of child support, based on a floating schedule. The case was remanded for the trial court to recalculate the child support, equitably divide the appreciation in value of the inheritance, and then reconsider the division of the marital assets and the award of alimony and attorney's fees. On remand, the trial court divided the appreciation in value of the inheritance, recalculated the child support obligation, and reaffirmed its remaining rulings. The husband now appeals for the second time, arguing that the trial court erred in awarding the wife alimony *in solido* and in not applying the new incomes shares child support guidelines. We affirm, finding no abuse of discretion in the award of alimony *in solido*, and holding that the husband cannot raise the revised child support guidelines for the first time on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert A. Wampler, Memphis, Tennessee, for Defendant/Appellant Egon Horst Schuett, Jr.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for Plaintiff/Appellee Jeanne L. Schuett.

### OPINION

This divorce case between Plaintiff/Appellee Jeanne L. Schuett ("Wife") and Defendant/Appellant Egon Horst Schuett, Jr. ("Husband") is on appeal to this Court for the second time. The underlying facts are set forth in detail in our prior opinion. *See Schuett v. Schuett*, No. W2003-00337-COA-R3-CV, 2004 WL 689917 (Tenn. Ct. App. Mar. 31, 2004).

Prior to the first appeal, on January 30, 2003, the trial court granted Wife an absolute divorce. Wife was awarded the first $40,000 in proceeds from the sale of the marital home because the parties

had originally borrowed this amount from Wife's parents. The remaining proceeds from the sale of the marital home were divided between the parties, as was the remaining marital property.[1] The trial court also classified a $600,000 PaineWebber account as Wife's separate property because she had inherited these monies. The trial court also held that the increase in value of the account, which amounted to $106,881.86 at the time of the divorce, was Wife's separate property. In addition, the trial court ordered Husband to pay Wife alimony *in solido* in the amount of $78,000 and granted Wife's request for attorney's fees and expenses totaling $11,708. Lastly, the trial court designated Wife as primary residential parent for the parties' three minor children and ordered Husband to pay child support in the amount of $2,522 per month plus a "floating" 41% of any bonuses received.

In the first appeal, this Court reversed the trial court's decision to classify the increase in value of the PaineWebber account as separate property, finding that both Husband and Wife substantially contributed to the preservation and appreciation of the account's increase in value. *Schuett*, 2004 WL 689917, at *4. We also reversed the child support award, holding that such a "floating" obligation was inconsistent with the Tennessee Child Support Guidelines and the "definite amount" requirement of T.C.A. § 36-5-101(a)(2)(A). *Id.* at *7. The cause was remanded to the trial court to equitably divide the increase in value of the PaineWebber account and recalculate child support based on a long-term average of Husband's gross income that included bonuses actually received. *Id.* at *4, 7. In light of this, on remand, the trial court was authorized to reconsider the division of property, the award of alimony *in solido*, and the award of attorney's fees and expenses.

On remand, the trial court held hearings on January 12 and 28, 2005, in which the trial court considered only argument of counsel, with no new evidence. On the issue of child support, Wife argued that Husband's child support obligation should be recalculated using his income from the years 2000, 2001, and 2002, prior to the divorce. This would result in a child support obligation of $4,082 per month. Husband asserted that the child support should be recalculated based on the average of his income from the date of the divorce, January 2003, to the date of the hearing, January 2005; during this time, Husband earned less annual income than before the divorce.[2] Under the child support guidelines in effect at the time of the hearing, the average of Husband's 2003 and 2004 incomes would result in a child support obligation of $3,475 per month.

On the issue of alimony, Husband argued that Wife was not an economically disadvantaged spouse in light of her separate estate and the division of marital property, and that consequently an award of alimony was not warranted. Husband also argued that if his child support obligation were increased, then both Wife's need and his ability to pay would be commensurately reduced. In

---

[1]Not including the first $40,000 in proceeds from the sale of the marital residence, the trial court's original classification of the parties' remaining assets resulted in a marital estate of approximately $420,000. The trial court did not make express findings on the parties' differing property values, but it appears that each party was awarded a near equal portion of this property. According to Wife's values, she received $198,243 and Husband received $216,126 of the remaining marital property. Husband's values reflect that he received $206,984 and Wife received $223,319 of the remaining marital property.

[2]With bonuses, Husband earned $126,255 in 2003 and $158,708 in 2004.

response, Wife argued that a modified child support obligation would merely eliminate the "floating" aspect of the original award, and would essentially amount to that which was contemplated under the original order. Therefore, neither Wife's need nor Husband's ability to pay would be affected. Second, Wife asserted that the equitable division of increase in value of her PaineWebber account would leave Wife with a diminished amount of separate property. Accordingly, Wife asserted, the award of alimony should be increased.

On September 19, 2005, the trial court entered its order on remand. The trial court divided equally the increase in value of Wife's PaineWebber account, which amounted to $142,512 as of the date of the entry of the order. Regarding the marital home, the court affirmed its original division—Wife would receive the first $40,000 in proceeds from the sale of the marital residence and then half of the remaining proceeds. The trial court also affirmed its original ruling on the division of the remaining marital assets and expressly found that Wife would receive 52% and Husband would receive 48% of the net marital estate. The original award of alimony *in solido* was not disturbed and amounted to a lump sum of $78,000. Of that total, $72,000 represented alimony "in the nature of support, as opposed to a property division;" the remaining $6,000 was intended to offset a disparity in the value of the parties' vehicles. Apparently utilizing the income figures urged by Husband, the trial court set Husband's revised child support obligation at $3,475 per month, beginning February 1, 2005.[3] The revised obligation resulted in a child support arrearage of $28,818.72, including interest. Finally, the trial court affirmed the original award of attorney's fees to Wife—$11,708—and added an additional $3,000 for the proceedings on remand.

From this order, Husband again appeals. In this appeal, Husband argues that the trial court erred in (1) awarding alimony *in solido* in the amount of $72,000 to Wife and (2) failing to apply the new income shares Child Support Guidelines, which went into effect on January 18, 2005, in recalculating Husband's child support obligation. Wife asks this Court to affirm the trial court and award her reasonable attorney's fees and expenses for this appeal.

We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); **Berryhill v. Rhodes**, 21 S.W.3d 188, 190 (Tenn. 2000). The trial court's legal conclusions, however, are reviewed *de novo* with no presumption of correctness. **Taylor v. Fezell**, 158 S.W.3d 352, 357 (Tenn. 2005).

We consider first whether the trial court erred in awarding Wife $72,000 in alimony *in solido*. Husband argues that the trial court did not consider Wife's need or her separate property in making the award of alimony *in solido* to Wife. He contends that Wife has no need for spousal support because of her $600,000 separate inheritance, and because she received 52% of the marital estate.

---

[3]Husband has filed a petition for modification, and this petition is currently pending in the trial court.

In reviewing this issue, we are mindful that determinations of alimony are factually driven and require the trial court to balance the various factors contained in T.C.A. § 36-5-101(d)(1).[4] ***Brown v. Brown***, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). Accordingly, the trial court is afforded broad discretion concerning an award of alimony, and an appellate court should reverse such an award only in instances in which this discretion "has manifestly been abused." ***Hanover v. Hanover***, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). In making an award of alimony, fault may be considered, and an "amount of alimony should be determined so 'that the party obtaining the divorce [is not] left in a worse financial situation than he or she had before the opposite party's misconduct brought about the divorce.'" ***Aaron v. Aaron***, 909 S.W.2d 408, 410-11 (Tenn. 1995) (alteration in original) (quoting ***Shackleford v. Shackleford***, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980)). However, an award of alimony should not be punitive in nature. ***Anderton v. Anderton***, 988 S.W.3d 675, 682 (Tenn. Ct. App. 1998) (citing ***Duncan v. Duncan***, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); ***McClung v. McClung***, 198 S.W.2d 820, 822 (Tenn. Ct. App. 1946)).

We first note that the record before us does not contain any transcripts or trial exhibits from the underlying divorce proceedings. Pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, Husband submitted an abbreviated record, which he deemed sufficient to "convey a fair, accurate and complete account of what transpired in the trial court with respect to the issues . . .

---

[4]Section 36-5-101(d)(1) of the Tennessee Code Annotated provides as follows:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in § 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1)(A)-(L) (2001). The alimony provisions of section 36-5-101 have since been removed, Act effective June 1, 2005, ch. 287, § 1. The above factors may now be found in T.C.A. § 36-5-121 (2005).

form[ing] the basis of [his second] appeal." Tenn. R. App. P. 24(a). The appellate record includes select papers from the original divorce proceedings, documents entered on remand, and the post-remand transcripts of the arguments from counsel.

Based on the limited record before us, we find that the trial court considered the appropriate factors, including Wife's separate property, in deciding to affirm its original award of alimony *in solido*. In the first appeal, this Court reclassified the increase in value of Wife's PaineWebber account as marital property and authorized the trial court to reconsider the alimony award in light of that modification:

> Such correction in the classification of this account's increase in value necessarily affects factors (G) and (H) [of the support statute] and could result in a revised [alimony] award. Therefore, we remand this issue to the trial court for a revised alimony award, if necessary, . . . that considers the relevant factors of Tenn. Code Ann. § 36-5-101(d)(1).

***Schuett v. Schuett***, No. W2003-00337-COA-R3-CV, 2004 WL 689917, at *5 (Tenn. Ct. App. Mar. 31, 2004). On remand, the trial court divided the appreciation in value, which totaled $142,512 at the time of the order, equally between the parties. Accordingly, Husband's share of the marital estate increased by $71,256. After two days of hearings that focused in part on the parties' separate and marital estates, the trial court left in place the original award of $78,000 in alimony *in solido*, but expressly designated $72,000 of the award as alimony "in the nature of support, as opposed to a property division."[5] Clearly the trial court considered Wife's separate assets in affirming its original award of alimony.

Furthermore, we cannot say that the trial court abused its discretion in awarding Wife $72,000 in the nature of support, despite the division of marital property and Wife's separate inheritance of $600,000. For most of the parties' marriage, Husband was the primary wage earner, while Wife contributed as a full-time homemaker. Three years prior to the divorce, Husband's income ranged from $145,231 to $232,000 per year. Post-divorce, Husband earned $126,255 in 2003 and $158,708 in 2004. In contrast, before Wife stopped working outside the home, her earning capacity was approximately $30,000 per year. Moreover, Wife's statement of income and expenses reflected a monthly deficit of $6,610 in 2003. Assuming that Wife obtains full-time employment, it is clear that her earning capacity will remain far below that of Husband.

In addition, the trial court awarded the parties near equal portions of the marital estate. Even with Wife receiving the first $40,000 of the proceeds from the sale of the marital home, and taking into account the inclusion of the increase in value of the PaineWebber account in the marital estate,

---

[5]Alimony *in solido* is typically awarded to "adjust the distribution of the parties' marital property." ***Burlew v. Burlew***, 40 S.W.3d 465, 471 (Tenn. 2001). Our review of the post-remand hearing in the instant case, however, indicates that the trial court initially determined that Wife was entitled to spousal support in the amount of $2,000 for thirty-six months. At Husband's request, however, the trial court converted the support award to a lump sum payment of $72,000.

Wife received approximately 52% and Husband received approximately 48% of the marital property. According to Wife's valuation, she took $309,499 of the marital property, and Husband took $287,382. As noted by Husband, Wife also has a separate inheritance of $600,000. It is undisputed, however, that this money was not used for day-to-day expenses during the parties' marriage, and Wife should not have to deplete her inheritance in order to pay for present needs that Husband has the ability to provide. *See Halvestadt v. Halvestadt*, 1994 WL 719810, No. 01-A-01-9406-CV00299, at *2 (Tenn. Ct. App. Dec. 30, 1994) ("[The plaintiff] should not be required to encroach upon her security for future needs in order to supply present needs which defendant is able to supply."); *Kizer v. Kizer*, 1998 WL 83675, No. 01A01-9707-GS-00304, at *2 (Tenn. Ct. App. Feb. 27, 1998) ("Without spousal support, [Wife] will be forced to begin depleting the assets she was awarded in the property division in order to support herself."). As an additional consideration, Husband's adultery led to the break-up of the marriage, and relative fault is a valid factor in assessing an award of alimony. T.C.A. § 36-5-101(d)(1)(K).

Based on the above factors, we find no abuse of discretion in the trial court's award to Wife of $72,000 in spousal support. Therefore, with respect to the issue of alimony, we affirm the trial court's decision.

Husband next argues that the trial court erred in not applying the new income shares Child Support Guidelines in recalculating his child support obligation. These revised guidelines went into effect on January 18, 2005. Tenn. Comp. R. & Regs. 1240-2-4-.01 to -0.9 (2005). Husband contends that the issue of child support was heard on January 28, 2005—ten days after the new guidelines became effective.

We note, however, that Husband did not present this issue to the trial court, and it cannot be raised for the first time in this appeal.[6] *See, e.g., Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Conceding that he failed to raise the issue to the trial court below, Husband asks this Court to nevertheless apply the new guidelines, in the interest of judicial economy. *See Fleming v. Fleming*, No. 01-A-01-9504-CV00178, 1995 WL 611286, at *1, 3 (Tenn. Ct. App. Oct. 19, 1995) (remanding for consideration under regulations that went in effect before the filing of the final judgment in the interest of judicial economy); *see also Florence v. Florence*, No. 85-272, 1996 WL 125539, at *3-4 (Tenn. Ct. App. Mar. 22, 1996) (relying on *Fleming* and remanding for consideration under regulations that went into effect prior to the entry of the final judgment). However, since Husband has already filed a new petition for modification of his child support obligation, which is pending

---

[6]As noted above, the trial court held hearings on the remanded issues on January 12 and 28, 2005. The parties dispute whether the trial court actually heard the issue of child support at the later hearing. Wife asserts that the child support issue was "heard" on January 12, 2005, noting that at the conclusion of that hearing the trial court instructed the parties to return "for ruling" on January 28. Indeed, at the outset of the January 28 hearing, the parties briefly reasserted their respective positions on the issue of child support, and the trial court issued its ruling from the bench before hearing arguments on other matters. In light of our ruling that Husband may not raise this issue for the first time on appeal, we need not determine whether this would make a difference on the applicability of the new guidelines.

before the trial court, we do not see how judicial economy is served by remanding the issue yet again. Therefore, we affirm the trial court's award of child support.

Finally, Wife has requested reasonable attorney's fees incurred in defense of this appeal. The award of appellate attorney's fees is within the sound discretion of this Court. *See Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In exercising this discretion, we consider "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn.1962)). Under the circumstances of this case, we find the request for attorney's fees to be well taken, and we remand the cause to the trial court to determine a reasonable amount of attorney's fees incurred by Wife in defending this appeal.

The decision of the trial court is affirmed. Costs of this appeal are assessed against Appellant Egon H. Schuett, Jr., and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE