# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## PETER GREGG McKEE v. PENNY MARIE PEARSALL McKEE

**Appeal from the Chancery Court for Maury County**
**No. 96-493      Jim T. Hamilton, Chancellor**

---

**No. M1997-00204-COA-R3-CV - Decided May 23, 2000**

---

This appeal involves the financial aspects of a marriage that lasted less than ten years. Both parties sought a divorce and vigorously joined issue over the classification of their property, the division of the marital estate, and the wife's demands for spousal support and attorney's fees. Following a bench trial, the Chancery Court for Maury County declared the parties divorced. The trial court also awarded the parties their separate property, distributed 37% of the marital estate to the wife, and declined to award the wife spousal support. On this appeal, the wife takes issue with the trial court's classification and division of the property and its refusal to award her either spousal support or attorney's fees. While the trial court erred in the classification of the marital property, we have determined that its division of the marital estate, once corrected, is equitable. We have also determined that the trial court should have granted the wife short-term spousal support but properly denied her request for attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified and Affirmed**

KOCH, J., delivered the opinion of the court, in which TODD, P.J., M.S., and CANTRELL, J., joined.

Robert L. Holloway, Jr., Columbia, Tennessee, for the appellant, Penny Marie Pearsall McKee.

Thomas W. Hardin and Darren J. Scoggins, Columbia, Tennessee, for the appellee, Peter Gregg McKee.

### OPINION

Peter Gregg McKee and Penny Marie Pearsall McKee were married in Michigan in July 1987. Mr. McKee was fifty years old and had been married once before. Ms. McKee was thirty-eight and had already been married twice. The parties had no children together, although both parties had adult children from their earlier marriages. Both parties had college degrees. Mr. McKee was an engineer who had worked for General Motors in Michigan since 1963, and Ms. McKee had worked as a teacher and as an administrative assistant with Pepsi Cola. Mr. McKee's annual income at the time of the divorce was approximately $146,000. Ms. McKee earned approximately $23,000

per year when she was last employed full-time outside the home. Mr. McKee's net worth at the time of the marriage was approximately $390,000; while Ms. McKee had a negative net worth.[1] By the time of the divorce, the parties' combined net worth was approximately $1.6 million.

The parties moved to Tennessee in 1998 when Mr. McKee transferred to the Saturn Corporation in Spring Hill. Ms. McKee did not seek full-time employment following the move to Tennessee. She asserted at trial that Mr. McKee discouraged her from seeking work outside the home. Mr. McKee, however, testified that Ms. McKee declined to pursue any employment opportunities or to return to school because she did not wish to be away from her pet dogs for more than four hours a day. At one point, Ms. McKee attempted to sell her homemade wall hangings but this venture was not successful. She also took work cleaning houses on a part-time basis.

The marriage began to deteriorate in the early 1990's, and the parties began to sleep in separate rooms. Mr. McKee testified that Ms. McKee was dissatisfied with the physical aspects of the parties' relationship but declined to seek help from a marriage counselor. He also stated that Ms. McKee assaulted him on two occasions and that she displayed more affection for the family dogs than for him. By September 1995, the parties had separated and were living in separate homes. Ms. McKee eventually had two sexual affairs with other men during the parties' separation.

In August 1996, Mr. McKee filed suit for divorce in the Chancery Court for Maury County alleging irreconcilable differences. He amended his complaint six months later to add the ground of inappropriate marital conduct. Ms. McKee responded to the complaint in February 1997. While admitting that the parties had irreconcilable differences, she denied inappropriate marital conduct and counterclaimed for divorce both on irreconcilable differences and on inappropriate marital conduct. The trial court conducted a bench trial in May 1997. By the time of trial, Ms. McKee had moved to Cashiers, North Carolina where she worked as an administrative assistant at the Chatooga Club earning approximately $1,200 per month. The trial court filed its judgment on June 5, 1997. The judgment (a) declared the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) (Supp. 1999), (b) awarded the parties their separate property, (c) valued the marital estate at $687,890 and awarded Ms. McKee 37% of the marital property,[2] (d) granted each party custody of two of the parties' four dogs, (e) denied Ms. McKee's request for spousal support, and (f) directed the parties to be responsible for their own attorney's fees. Ms. McKee has appealed from this judgment.

## I.
### CLASSIFICATION AND DIVISION OF THE PROPERTY

---

[1]Mr. McKee's net worth eight months after the parties married was $398,640. Ms. McKee had debts in excess of $13,000 at the time of the marriage. Mr. McKee paid off these debts.

[2]Even though the June 5, 1997 judgment states that Ms. McKee was awarded 35% of the marital property, the value of the property Ms. McKee actually received amounted to 37% of the identified and valued marital estate.

Ms. McKee asserts that the trial court erred in its classification of their marital property and in the manner in which it divided the marital property. As we will detail below, we have determined that the trial court misclassified as marital property (1) the husband's interest in the parties' North Carolina house, (2) portions of an IRA in Mr. McKee's name, and (3) portions of the value of Mr. McKee's General Motors 401k account. We have also determined that the evidence supports the trial court's conclusion that awarding Ms. McKee 37 % of the marital property is equitable. Accordingly, we find that Ms. McKee is entitled to receive 37% of the revised value of the marital estate.

## A.
## Classification of the Separate Property

In divorce proceedings, separate property is not part of the marital estate subject to division under Tenn. Code Ann. § 36-4-121 (1996). *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Accordingly, when it comes to dividing a divorcing couple's property, the first order of business is to identify and distribute the separate property, if any, to each party. *See Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

Separate property includes (1) property owned by a spouse before marriage, (2) property acquired in exchange for property acquired before marriage, (3) income from and appreciation of property owned by a spouse before marriage, and (4) property acquired by a spouse at any time by gift, bequest, devise, or descent. *See* Tenn. Code Ann. § 36-4-121(b)(2). If either spouse makes a gift of separate property to the marital estate, the property is transmuted into marital property. *See McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). A presumption of transmutation arises when a party uses separate funds to purchase property but places the property in the names of both spouses. *See Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991). This presumption can be rebutted with "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *McClellan v. McClellan*, 873 S.W.2d at 351. *See also Batson v. Batson*, 769 S.W.2d at 858.

Regardless of the parties' intent, income from separate property or an increase in the value of separate property during the marriage becomes marital property if the non-owner spouse makes a substantial contribution to the preservation and appreciation of the separate property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Harrison v. Harrison*, 912 S.W.2d 124, 126 (Tenn. 1995). Marital property also includes the value of "pension, retirement or other fringe benefit rights[3] accrued during the period of the marriage," Tenn. Code Ann. § 36-4-121(b)(1)(B), regardless of the non-owning spouse's contributions during the marriage. *See Cohen v. Cohen*, 937 S.W.2d at 830; *Kendrick v. Kendrick*, 902 S.W.2d 918, 926 (Tenn. Ct. App. 1994); *Collins v. Willis*, No. 01A01-9808-CH-00433, 1999 WL 298261, at *3 (Tenn. Ct. App. May 13, 1999) (No Tenn. R. App. P. 11 application filed). Accordingly, we have held that marital

---

[3]It is irrelevant whether these rights are vested. *See Cohen v. Cohen*, 937 S.W.2d at 830 .

property includes any increase during the marriage in the value of retirement or pension rights, whether through passive growth or through either party's direct or indirect contribution. *See Umstot v. Umstot*, 968 S.W.2d 819, 822 (Tenn. Ct. App. 1997); *Mayfield v. Mayfield*, No. 01A01- 9611-CV-00501, 1997 WL 210826, at \*5 (Tenn. Ct. App. April 30 1997) (No Tenn. R. App. P. 11 application filed); *Franklin v. Franklin*, No. 03A01-9410-CV-00364, 1995 WL 371573, at \*2 (Tenn. Ct. App. June 21, 1995) (No Tenn. R. App. P. 11 application filed).

Classifying property as separate or marital is a question of fact. *See Cutsinger v. Cutsinger*, 917 S.W.2d at 241; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Thus, a trial court's classification decisions are entitled to great weight on appeal. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). These decisions will be presumed to be correct unless the evidence preponderates otherwise, *see Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983), or unless they are based on an error of law. *See Mahaffey v. Mahaffey*, 775 S.W.2d at 622.

**1.**
**The Real Property**

Neither party disputes the trial court's classification of the equity in the parties' home on Oak Valley Drive in Spring Hill as marital property. However, Ms. McKee asserts that the court erred by classifying as separate property $236,000 of the equity in the North Carolina property. We agree.

The parties purchased a 1.22-acre lot in North Carolina in March 1990. The title to the property was placed in their joint names. They later built a house on the property using $40,000 of Mr. McKee's money and $195,000 of the proceeds of the sale of the their home in the Cross Creek subdivision in Franklin, Tennessee.[4] Both parties put many hours of work into supervising and completing the construction of this house. Mr. McKee testified at trial that he did not consider the North Carolina property as marital property because he used what he believed were separate assets to purchase the property and to finance the construction. Nevertheless, he did not communicate to Ms. McKee his intention to keep this property as his separate property. By the time of the hearing, the equity in the property amounted to $500,000. The trial court concluded that $236,000 of this equity was Mr. McKee's separate property[5] and that the remaining $264,000 was marital property.

---

[4]When the parties first arrived in Tennessee from Michigan, Mr. McKee bought a home in the Cross Creek subdivision with the proceeds from the sale of his condominium in Michigan and other investments. While only Mr. McKee's name was on the deed, Ms. McKee contributed "sweat equity" by working to improve the house. Accordingly, when Mr. McKee sold the property in 1992, the equity in the house was marital property.

[5]The trial court apparently intended to reimburse Mr. McKee for the initial investment of his separate funds to acquire the property and to build the house. As we have already pointed out, the proceeds of the sale of the Cross Creek property were not necessarily Mr. McKee's separate property because they include marital property - the appreciation in the value of the Cross Creek property
(continued...)

When Mr. McKee purchased the North Carolina property, he caused both his and Ms. McKee's name to be put on the deed. This act gave rise to the presumption that Mr. McKee intended to make a gift to the marital estate. Mr. McKee now attempts to rebut this presumption with only his own testimony that he used his separate property to acquire and build the house and that he did not intend to treat the North Carolina property as marital property. As far as this record shows, Mr. McKee never expressed to Ms. McKee his intention to maintain this property as his separate property, and the record contains no evidence of other circumstances clearly indicating Mr. McKee's intention to keep this property separate. Accordingly, we hold that the entire equity in the North Carolina property is marital property.

**2.**
**The Investment and Retirement Accounts**

Ms. McKee also asserts that the trial court erred by failing to treat as marital property any accrual during the marriage of Mr. McKee's otherwise separate retirement-related accounts. We agree and hold that the increase in value of Mr. McKee's Quick & Reilly IRA and GM 401k account during the marriage is marital property.

Mr. McKee had five investment and retirement accounts at the time of the divorce hearing. The first account was an investment account with Delaware Service Company valued at $22,092 that Mr. McKee opened before marrying Ms. McKee ("Delaware Service account"). The second was an IRA Mr. McKee established before the marriage using a combination of several pre-marital investments. ("Quick & Reilly IRA"). This IRA was worth $13,260 when the parties wed and was valued at $25,220 at the time of trial Mr. McKee made no contributions to either the Delaware Service account or the Quick & Reilly IRA during his marriage to Ms. McKee. The third account was the 401k account Mr. McKee started when he went to work for General Motors in 1963 ("GM 401k account"). This account was worth $77,594 when the parties married and $291,538 at the time of trial. Mr. McKee also estimated that his contributions to the GM 401k account during the marriage and the accruals thereon amounted to $66,662. The fourth account was Mr. McKee's General Motors retirement plan ("GM retirement plan"). Based upon an analysis performed by a professional appraiser, the present value of the GM retirement plan was $608,427.[6] The fifth account was Mr. McKee's 401k account with Saturn Corporation ("Saturn 401k account") valued at $91,468.

The parties agreed that the entire value of Mr. McKee's Saturn 401k account was marital property. The trial court found that the Delaware Service account and the Quick & Reilly IRA were Mr. McKee's separate property. The court classified the $66,662 in contributions Mr. McKee made to his GM 401k account during the marriage as marital property and the $224,916 balance as Mr.

---

[5](...continued)
during the marriage.

[6]Based on his length of service with General Motors, Mr.McKee was entitled to pension payments of $4,199.40 per month.

McKee's separate property. The court also determined that $430,627 of the present value of Mr. McKee's GM retirement plan was Mr. McKee's separate property and that the remaining $177,800 was marital property.[7]

The trial court's analysis regarding Mr. McKee's Quick & Reilly IRA and GM 401k account is flawed because the court overlooked Tenn. Code Ann. § 36-4-121(b)(1)(B) which provides that the value of "pension, retirement or other fringe benefit rights accrued during the period of the marriage" is marital property regardless of the non-owning spouse's contributions during the marriage. Accordingly, the $11,960 increase in the value of Mr. McKee's Quick & Reilly IRA during the marriage should have been included in the marital estate. By the same token, the full $213,944 increase in the value of Mr. McKee's GM 401k account during the marriage should have been included in the marital estate.

We do not take issue with the trial court's classification of the remaining accounts. The record contains no evidence of the value of the GM retirement plan at the time the parties married,[8] and Ms. McKee does not contest the trial court's valuation on appeal. Based on the record, we cannot say that the trial court erred in its calculation of the marital portion of the GM retirement plan. Both parties agree that the Saturn 401k account is marital property. The Delaware Service account is not a retirement, pension, or other fringe benefit. It is an investment account set up by Mr. McKee before the marriage. Neither party contributed to the account financially, or in any other way contributed to its preservation or appreciation. The Delaware Service account remains Mr. McKee's separate property.

**B.**
**Division of the Marital Estate**

The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner. A division is not rendered inequitable simply because it is not precisely equal, *see Cohen v. Cohen*, 937 S.W.2d at 832; *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every piece of marital property. *See Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

---

[7]The trial court's calculation of the marital portion of Mr. McKee's GM retirement plan was based on the multiplication of the present value of the retirement by the "marital coverture." This "marital coverture" is a fraction with the numerator being the total length of the marriage and the denominator being the total time Mr. McKee contributed to the plan.

[8]Ms. McKee offered proof that if Mr. McKee broke service with his employer at the end of 1987, and retired at 65, his monthly benefit from the GM retirement plan would be $1,390. However, we do not know, and do not presume to speculate on, the present value of this benefit at the time of the parties' marriage.

Dividing a marital estate is not a mechanical process but, rather, is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d at 168. Appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore*, 929 S.W.2d at 372; *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). We ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. See *Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d at 622; *Hardin v. Hardin*, 689 S.W.2d at 154.

Our revisions to the classification of the separate and marital property have increased the size of the marital estate from $687,890 to $1,083,172.[9] The trial court effectively awarded Ms. McKee 37% of the marital estate in the June 5, 1997 judgment. Ms. McKee came into the marriage with a negative net worth. During the ten-year marriage, she did not earn a substantial income but did contribute as a homemaker and by helping improve the parties' real property. By the same token, Mr. McKee also helped around the home and took many of his meals outside the home. The parties had no children to add to Ms. McKee's responsibilities. Accordingly, after considering all the factors in Tenn. Code Ann. § 36-4-121(c), we have concluded that the evidence does not preponderate against the trial court's decision to award Ms. McKee 37% of the marital estate.

The following table summarizes our modifications to the trial court's classification of property and division of the marital estate.

| Asset | Husband Separate Property | Marital Property Equity | Wife Marital Property | Husband Marital Property |
|---|---|---|---|---|
| Real Estate: | | | | |
| Oak Valley Dr. | | 50,000 | 18,500 | 31,500 |
| N. C. Property | | 500,000 | 185,000 | 315,000 |

---

[9]The $395,282 increase includes: the $236,000 equity in the North Carolina property that the trial court erroneously classified as Mr. McKee's separate property, the $11,960 increase in the value of the Quick & Reilly IRA that the trial court erroneously classified as Mr. McKee's separate property, and $147,322 representing the difference between the increase in value during the marriage of Mr. McKee's GM 401k account and the amount of Mr. McKee's contributions and accruals thereon during the marriage.

| | | | | |
|---|---|---|---|---|
| Retirement & Investment | | | | |
| Delaware Serv. Co. | 22,092 | | | |
| Quick & Reilly IRA | 13,260 | 11,960 | | 11,960 |
| GM 401k | 77,594 | 213,944 | | 213,944 |
| GM Retirement Plan | 430,627 | 177,800 | | 177,800 |
| Saturn 401k | | 91,468 | | 91,468 |
| Vehicles: | | | | |
| 1979 Corvette | | 7,000 | | 7,000 |
| 1978 Jeep | | 3,000 | | 3,000 |
| 1996 Tahoe | | 28,000 | 28,000 | |
| ADJUSTMENT | | | 169,274 | (169,274) |
| TOTAL: | 543,573 | 1,083,172 | 400,774 | 682,398 |

A word about the adjustment depicted in the table is in order. We have decided not to award Ms. McKee 37% of Mr. McKee's 401k and retirement plans to avoid the negative consequences of premature withdrawals from these accounts. Instead, we have determined that it would be appropriate to increase her cash award by $169,274 and to correspondingly decrease Mr. McKee's award. This adjustment represents the additional funds required to increase the value of Ms. McKee's share of the marital estate to 37%, taking into consideration the marital property the trial court already awarded to her. The funds for the adjustment need not come directly from Mr. McKee's retirement accounts. Mr. McKee may, if he chooses, pay Ms. McKee the $169,274 in a lump sum or in monthly installments of $1,411 over ten years from the date of entry of the mandate in this case. These payments shall be considered as part of the division of marital property, not as spousal support. Mr. McKee should be able to afford these monthly payments because in post-tax income in 1996 was $8,200 per month.

## II.
### SPOUSAL SUPPORT

Ms. McKee also insists that the trial court erred by failing to award her spousal support. She argues that Mr. McKee should be required to continue to support her because he is financially able to do so. While this may very well be the case, entitlement to spousal support is also based on need. In light of the sparse evidence of Ms. McKee's need for additional support over and above what she will be receiving in the modified division of the marital property, we have concluded that she is entitled to receive short-term spousal support in the amount of $750 per month for two years.

There are no hard and fast rules for spousal support decisions. *See Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234. Even though fault is a relevant consideration when setting spousal support, *see* Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *See Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946).

The purpose of spousal support is to aid the financially disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *See Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). While divorced couples often lack sufficient income or assets to enable both of them to retain their pre-divorce standard of living, *see Brown v. Brown*, 913 S.W.2d at 169-70, the obligor spouse may be able to provide some "closing in money" to enable the disadvantaged spouse to approach his or her former financial condition. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995).

At the time of trial, Ms. McKee was forty-five years old and in good health. She has a college degree and work experience as a school teacher and as an administrative assistant. She worked as an administrative assistant for a club in North Carolina where she earned approximately $1,182 per month - less than what she earned when she worked full-time in Michigan. As a result of our modifications in the division of the marital estate, Ms. McKee will receive over $400,000 in property. She also precipitated the divorce by her decreasing interest in and satisfaction with the marriage.

Ms. McKee asserted at trial that she needs $3,963 per month to support herself. While the trial court made explicit findings concerning Ms. McKee's statement of monthly expenses, we find them too generous.[10] If she seeks no other employment and if Mr. McKee elects to pay the monetary adjustment we have made in the division of marital property, Ms. McKee will have approximately $2,685 per month in disposable income. After considering all the factors in Tenn. Code Ann. § 36-

---

[10] For example, Ms. McKee states that her clothing expenses are $600 per month.

5-101(d)(1), we have concluded that Mr. McKee should pay Ms. McKee $750 per month in short-term spousal support for two years from the date of entry of the mandate in this case. This support is not rehabilitative support and is thus not subject to modification.

## III.
### ADDITIONAL AWARD FOR LEGAL EXPENSES

Ms. McKee also asserts that the trial court erred by failing to award her additional funds to defray her legal expenses. Awards for legal expenses in divorce proceedings are treated as awards for additional support. *See Smith v. Smith*, 912 S.W.2d at 161; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). The decision to award attorney's fees lies within the sound discretion of the trial judge, *see Aaron v. Aaron*, 909 S.W.2d at 411; *Brown v. Brown*, 913 S.W.2d at 170, and this court will not interfere with the trial judge's decision unless the evidence preponderates against it. *See Batson v. Batson*, 769 S.W.2d at 862. A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would find it necessary to deplete other assets to do so. *See Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

Ms. McKee should be responsible for her own legal expenses. She has received sufficient funds through the division of the marital estate and the award of temporary spousal support to pay her lawyers without diminishing the capacity of her assets to provide additional long term income. Accordingly, we affirm the trial court's denial of Ms. McKee's request for attorney's fees.

## IV.

We affirm the judgment as modified herein and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal in equal proportions to Penny Marie Pearsall McKee and her surety and to Peter Gregg McKee for which execution, if necessary, may issue.