IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2001 Session

**AMY LYNN BLANKENSHIP v. CARL SCOTT BLANKENSHIP**

**A Direct Appeal from the Chancery Court for Williamson County
No. 26488    The Honorable Russ Heldman, Judge**

---

**No. M2000-01483-COA-R3-CV - Filed April 23, 2001**

---

Husband appeals a final decree of divorce terminating a marriage of ten years, presenting issues regarding the trial court's finding of contempt, confiscation of his guns, alimony, division of marital assets and debts, and attorneys fees.  We vacate in part, modify in part, and affirm as modified.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court is Vacated in Part, Modified in Part, and Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Virginia Lee Story, Franklin, For Appellant, Carl Scott Blankenship

Rebecca E. Byrd, Franklin, For Appellee, Amy Lynn Blankenship

**OPINION**

Amy Lynn Blankenship ("Wife") and Carl Scott Blankenship ("Husband") were married in Alabama in July of 1989.  Four children were born of this marriage: twin boys, age eight years, a third son, age four years , and a daughter, age two years at the time of trial.   At the time of the marriage, Husband was attending medical school and Wife was completing a degree in secondary education. Wife graduated in December 1989 and began teaching in January of 1990.  The parties moved to Vestavi, Alabama where Husband began his  first year of residency training, and Wife continued to teach school.  Twin boys, Peter Carl and Andrew Scott, were born February 6, 1992, while the parties resided in Alabama. Wife quit teaching in December 1991 and has not worked outside the home since that time.  In July of 1992, the parties and their two children moved to Nashville, Tennessee, where Husband continued his residency.  In 1995, the family moved to Gadsden, Alabama, where Husband was an associate in an anesthesiology group.  A third child, Elijah Luke, was born on January 30, 1996. Ellie Marie, the parties' fourth child, was born on April 22, 1998.

The family then moved back to Nashville, where Husband completed a fellowship at Vanderbilt Medical University and was employed by a medical group. Wife filed for a divorce in September of 1999, alleging grounds of irreconcilable differences, adultery, and inappropriate marital conduct. On October 14, 1999, Husband filed an answer and counter-complaint alleging irreconcilable differences. On October 19, 1999, the trial court heard Wife's motion for temporary support and Husband's motion for joint custody of the children, visitation, and for dismissal of the previously issued restraining order. By order filed October 20, 1999, the trial court stated that it had come to the court's attention that Husband had guns and ammunition in the trunk of his car, and that there was also another gun located in the marital residence, now occupied by Wife. The order "requested" Husband to turn the guns over the Williamson County Sheriff's Department and "requested" Wife turn over the gun in the residence to the Williamson County Sheriff's Department. On October 27, 1999, the court entered an order on the pending motions, which states in pertinent part:

> 1. The Temporary Restraining [Order] entered by this Court on September 7, 1999, shall be modified so as to allow Husband to drive to the home in order to pick up the children for his visitation. Husband shall not be allowed to enter the residence at 5010 Ashby Drive, Williamson County, Tennessee. In all other respects the Temporary Restraining Order shall remain in full force and effect.
>
> 2. Husband shall immediately remove the two firearms from the trunk of his car and turn them into the Williamson County Sheriff's Department. Wife shall take the remaining firearm in the parties' residence and turn it over to her counsel, who will then turn it into the Williamson County Sheriff's Department.
>
>         *                *                *
>
> 5. All other requests for relief in Husband's Motion are denied.
>
> 6. Wife shall be responsible for the payment of the mortgage and utilities at the parties' home and the payment of the lease on the Ford Expedition which she shall be entitled to drive.
>
> 7. Husband shall maintain health insurance for Wife and the parties' minor children and the parties shall divide equally all uncovered health expenses.
>
> 8. Husband shall be responsible for making the payments on the debt to the Internal Revenue Service.

9. As child support, Husband shall pay the amount of $3,435 a month based upon Husband's base salary of $130,000 a year.

10. Husband shall pay alimony to Wife in the amount of $1,565 a month.

\*　　　　　\*　　　　　\*

13. Husband shall pay Wife $1,500 attorney's fees within 30 days from the date of entry of this Order in order to allow her to prosecute her case.

On April 12, 2000, Wife filed a petition for civil contempt for Husband to show cause why he should not be held in contempt for his failure to make any payments to the Internal Revenue Service and his failure to pay health care expenses.

A non-jury trial was held on May 8 and 9, 2000. On May 17, 2000, the trial court entered an order granting an absolute divorce to Wife on the grounds of inappropriate marital conduct and adultery and dismissing Husband's counter-claim. The order provided that pursuant to stipulation, Wife was awarded custody of the four minor children, Husband was granted visitation, Husband was ordered to pay child support in the amount of $3,551.00 per month, based on his 1999 salary and bonus totaling $134,118.00, Husband was ordered to maintain health insurance for the children, and to be responsible for one-half of Wife's medical bills through the date of the entry of the final divorce. The order further enjoined Husband from having firearms or ammunition in his residence or custody or control for "as long as he lives," and provided that the temporary injunction entered on October 20, 1999, was made permanent, without qualification.[1] In addition, the trial court found Husband in contempt of court and ordered that he "shall be incarcerated in the Williamson County Jail until such time as he has purged himself by submitting the appropriate payment to the Internal Revenue Service for the 1998 tax liability." Bond was set at $6,000 pending appeal.

Husband has appealed, raising seven issues as stated in his brief:

I. Whether the trial court erred in holding Husband in contempt for failure to pay the IRS when Wife refused to sign the taxes and therefore prevented Husband from establishing a payment schedule to the IRS for the subject debt?

II. Whether the trial court erred in seizing Husband's guns, placing them in the custody of the Williamson County Sheriff's Department?

---

[1] In the order, the trial court "requested" Husband to turn over his guns and ammunition to the Williamson County Sheriff's Department and "ordered" the department "to hold and keep said guns and ammunition in its custody pending further orders of the court."

-3-

III.   Whether the trial court erred in awarding the divorce on the grounds of adultery and inappropriate marital conduct?

IV.   Whether the trial court erred in granting Wife alimony *in futuro*?

V.   Whether the trial court erred in failing to allocate some of the marital debt to Wife and in the division of the marital assets?

VI.   Whether the trial court erred in granting Wife attorney's fees when Husband had already paid $3,000.00 from funds that Wife had stolen from his paycheck and had already paid an additional sum of $1,500.00 toward her attorney's fees pursuant to the pendente lite order?

VII.   Whether appellant should be awarded his attorney fees with costs of appeal taxed to appellee?

Regarding Husband's first issue, he contends that pursuant to the pendente lite order, he was to make payments to the Internal Revenue Service on a tax debt. Husband asserts that at the trial, both he and Wife testified that his tax returns were not complete and that Wife would not sign the return. Husband testified that pursuant to a discussion with his accountant, it was his understanding that no official tax debt existed until the tax return had been filed. Husband understood that upon filing his tax return, he was to submit a proposed repayment plan and the Internal Revenue Service would either approve or modify the repayment schedule. Husband contends that he did not have the ability to make payments toward the tax debt until an official debt actually existed. At the time of trial, no debt existed due to Wife's refusal to sign the tax return. Husband requests that this Court either order Wife to sign the 1998 joint tax return and to pay one-half of the tax debt, or in the alternative, if Husband is required to file as married filing separately, that Wife still be required to pay one half of the tax debt.

Wife asserts that Husband has intentionally not paid the tax debt and that his failure to pay the debt placed her in fear of losing her home. Wife asserts that Husband's ability to make payment to the Internal Revenue Service was not contingent upon her signing the tax returns and that Husband has willfully failed to adhere to the trial court's order of October 27, 1999.

In order for a court to properly find contempt, it must find willful disobedience, resistance, or interference on the part of the person found in contempt. ***Ahern v. Ahern,*** 15 S.W. 3d 73, (Tenn. 2000). In addition, the court must find that the party to be held in contempt had the ability to pay at the time the funds were due, and that the failure to pay was willful. ***Id.*** at 79. Civil contempt is the incarceration of a party in order to compel performance of the court's order, and the party is said to have "the keys to the jail" and can purge the contempt through compliance with the court's order. ***Id.*** (Citing ***Garrett v. Forest Lawn Memorial Gardens,*** 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). Civil contempt is only available when the party charged has the ability to comply with the

court's order at the time of the contempt hearing. T.C.A. § 29-9-104 ("(a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until her performs it.") "[I]t is said that a civil contempt is one where a person refuses or fails to comply with an order of the court and punishment is meted out for the benefit of a party litigant. *Shiflet v. State,* 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966). On the other hand, a criminal contempt is punitive in nature, and the proceeding is to "vindicate the authority of the law and the court as an organ of society." *Id.*

In *McCray v. McCray*, No. 01-A-01-9704-CH00170, 1997 WL 772140 (Tenn. Ct. App. Dec. 17, 1997), the Middle Section of the Tennessee Court of Appeals reversed the order of the trial court which held a husband in contempt for failure to pay child support and alimony. In so ruling, the *McCray* Court found, *inter alia,* that since both parties agreed that the amount of arrearages must be recalculated, it would be impossible to decide what it would take for the husband to purge himself of contempt, thus the civil contempt could not stand. *Id.* at * 9.

In the instant case, Husband testified that he included $500.00 per month on his monthly expenses, but that amount was based on an estimate that the total debt to the Internal Revenue Service was $20,000. Husband testified that the actual debt for 1998 and 1999 taxes was $13,113. Husband filed a 1999 separate return with an initial payment of $300.00 and was to pay $250.00 per month on that debt, however, neither the 1998 return nor payment voucher have been filed, nor has he received any notice from the Internal Revenue Service regarding the debt for the 1998 taxes. The record contains an unsigned 1998 tax return prepared for Husband and Wife designated as "married filing jointly." The form indicates that where parties are filing jointly "BOTH must sign." It appears that the 1998 return has not been filed, and a repayment schedule for the parties' 1998 taxes debt has not been established. Although Husband's testimony indicates that he is aware of the total amount of the tax debt, there is currently no monthly payment schedule. The trial court's order precipitating the charge of contempt states:

> 8. Husband shall be responsible for making the payments on the debt
> to the Internal Revenue Service.

The record establishes that there is no payment schedule for the 1998 taxes. The order provides that Husband shall be responsible for payment and the proof is clear that Husband has not denied his responsibility. Accordingly, we find that Husband has not willfully disobeyed the court order, and the trial court's order holding Husband in contempt must be vacated.

Husband's second issue addresses whether the trial court erred in seizing his guns and placing them in the custody of the Williamson County Sheriff's Department. After a hearing held on October 19, 1999, the trial court filed an order stating that during the hearing, it came to the court's attention that Husband was carrying loaded guns in the trunk of his car, and that there was a loaded gun at the parties marital home. The order states in part:

Because of the volatile testimony presented, including testimony concerning his past threat against a lover, because Dr. Blankenship wanted to be able to pick up his children at his residence to exercise <u>pendente lite</u> visitation, and because Ms. Blankenship is in reasonable fear of Dr. Blankenship, who has been untruthful with her during the marriage, and for other reasons, the Court requested Dr. Blankenship and his attorney to turn over the guns and ammunition located in the trunk of his car parked in a parking lot next to the Williamson County Courthouse to the Williamson County Sheriff's Department for said Department's keeping pending further Orders of this Court. At this time, the Court is reasonably suspicious of this litigant who does not need to carry loaded guns in his car trunk towards the courthouse while he is to appear for a contested divorce and custody case. The Court also requested Ms. Blankenship to turn over the gun located at the marital residence to her attorney who shall then turn the gun over to said Department.

The trial court's order entered October 27, 1999, specifically ordered Husband to remove two firearms from his trunk and to turn them into the Williamson County Sheriff's Department. The May 17, 2000 order states: "In addition, Husband is enjoined from having firearms or ammunition in his residence or in his custody or control as long as he lives. The temporary injunction entered October 20, 1999 is made permanent, without qualification."[2]

The final order entered in this case on October 13, 2000, provides, as pertinent to Husband's firearms, as follows:

4. Husband's affidavit filed August 8, 2000, states as follows: "That I will place the firearms and ammunition which have been in the custody of the Williamson County Sheriff's Department with my Father at his home being Mr. George Blankenship, 6010 Silver Lake Circle, Pinson, AL, 35216 and my Father accepts the care of these items." The Court accepts Husband's sworn statement and expects him to comply with it. He shall do so. The Williamson County Sheriff's Department shall permit George Blankenship to pick up Husband's guns and ammunition, none of which shall be in the possession of Husband during his exercise of visitation with the minor children. Husband shall cause safety locks to be secured on all his guns as he promised. The prior injunction concerning Husband's

---

[2] As previously noted in footnote 1 of the opinion, Husband was not enjoined in any manner by the trial court but was "requested" to turn over weapons to the Williamson County Sheriff's Department. If there is an injunction to remain in full force as provided by this order, it is an order to the sheriff's department to hold and keep the firearms pending further orders of the court.

access to his guns and ammunition contained in paragraph 7 of the
Order of May 17, 2000, is therefore modified and this paragraph
replaces the same and constitutes the final injunction on this issue of
access to said guns and ammunition.

Although we have some difficulty in understanding the exact status of the matter at the
present time, it appears that the trial court expects Husband's guns to be out of his possession and
control and in the possession and control of his father probably *ad infinitum*. We have examined the
record in this case and find no justification for confiscation of Husband's guns in the first place;
although, he should have been admonished for transporting loaded weapons in his vehicle and in
keeping loaded guns which might be accessible to the children. If the trial court's present order is
construed to enjoin Husband from having possession of his guns, the injunction should not have been
issued and will be vacated.

Husband's third issue addresses whether the trial court erred in awarding the divorce on the
grounds of adultery and inappropriate marital conduct. Husband asserts that he confessed his only
adulterous relationship to Wife, and that she forgave his conduct, and thereafter the parties conceived
their fourth child. Husband contends that he is thereby afforded the complete defense of condonation
under Tennessee Law. Husband avers that both parties have been guilty of inappropriate marital
conduct, and that the divorce should have been granted on those grounds. On the other hand, Wife
admits that she forgave Husband for one adulterous relationships, however contends that she did not
forgive or condone subsequent adulterous relationships of which she became aware in December of
1998.

Pursuant to T.C.A. § 36-4-101 (3) adultery by either party is grounds for divorce. Adultery
can be proved by circumstantial evidence without direct proof of illicit intercourse. *Gilliam v.
Gilliam,* 776 S.W.2d 81, 84 (1988) (citing *Canning v. Canning,* 59 Tenn. App. 678, 443 S.W.2d
502, 505-06 (Tenn. Ct. App. 1968). T.C.A. § 36-4-112 provides defenses to adultery including a
bar where "complaint has admitted the defendant into conjugal society and embraces after
knowledge of the criminal act," referred to in Tennessee case law as "condonation". In *Gilliam v.
Gilliam,* 776 S.W.2d at 85, the Court held that condonation is not a valid defense where 1.) the
husband did not make full disclose to the wife regarding the number of his paramours; 2.) the
husband fraudulently induced wife to resume marital relations; and 3.) the husband secretly engaged
in adulterous relationships after the alleged condonation. *Id.* at 85. Condonation of an act is not
possible until the act is known to have occurred. *Jane Doe v. John Doe,* 59 Tenn. App. 108, 438
S.W.2d 353, 357 (1968).

In the instant case the trial court found that both inappropriate marital conduct and adultery
were valid grounds for the divorce stating:
Wife's allegation as to inappropriate marital conduct on the part of
Husband are sustained by the proof and Husband is guilty of such
inappropriate conduct toward Wife as to render cohabitation unsafe
and improper. In addition, Husband is guilty of adultery which, even

if condoned, was nonetheless revived by his subsequent misconduct towards Wife.

The trial court erred in finding that Husband's adultery was revived by his subsequent misconduct. As expressed by this Court in ***Newsom v. Newsom,*** No. D15064-2 R.D., 1989 WL 153881 (Tenn. Ct. App. Dec. 20, 1989):

> It is well settled law in this state that adultery, once condoned, cannot thereafter be relied upon as a ground for divorce. ***McClung v. McClung,*** 29 Tenn. App. 580, 198 S.W.2d 820 (1946). Unlike cruel and inhuman treatment, adultery is wiped out and not subject to revival after condonation has occurred. ***See Doe v. Doe,*** 59 Tenn. App. 108, 438 S.W.2d 353 (1968); ***Humphreys v. Humphreys,*** 39 Tenn. App. 99, 281 S.W.2d 270 (1958).
>
> *        *        *
>
> The above-cited cases stand for the proposition that cruel and inhuman treatment, not adultery, even though forgiven, may be revived by subsequent acts of cruelty.

***Id.*** at *2.

However, we believe the trial court's error is harmless. Upon a review of the record, we find that although Wife forgave Husband for his affair in Gadsden, Alabama, she was unaware of the details of that affair and other indiscretions that followed until his confession in December of 1998. In addition, there were indiscretions by Husband committed prior to Wife's alleged condonation of which she was not aware until December of 1998. No forgiveness or condonation followed Wife's discovery of Husband's additional acts.

Husband denies further acts of adultery, however admits to several indiscretions that occurred prior to Wife's alleged condonation including a two month period during Husband's surgical residency in Birmingham that he was "flirtatious with a nurse," and an involvement with a nurse during his anesthesia residency in Nashville. These involvements took place before the parties moved to Gadsden, and Husband testified that he did not admit to them at the time of their occurrence.

Upon a review of the record, we find that Wife was not fully aware of the extent of Husband's indiscretions at the time of her alleged condonation. Wife stated that Husband admitted to the affair in Gadsden, but that she was not aware "of the sordid details" or "that they did it in the operating room," and stated "these types of things are unacceptable to me." Additionally, at the time of the alleged condonation, Wife was unaware of Husband's involvements with other women. The testimony of the Wife indicates that until December of 1998, Husband had only reveal an isolated

adulterous affair to her, and had not fully disclosed the facts surrounding the affair, nor had he disclosed that his involvement with other women was not limited to that one isolated affair. Therefore, Wife could not have condoned the infidelity of her Husband where she was not fully aware of the nature and extent of Husband's behavior. *See Doe v. Doe* . 438 S.W.2d at, 357, *and Gilliam v. Gilliam,* 776 S.W.2d at 85.

Husband testified otherwise, claiming that Wife was fully aware of the details of his affair in Gadsden, and questioned him extensively regarding that involvement. However, in its order of May 17, 2000, the trial court found that Wife was a creditable witness, while Husband was not.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Accordingly, we defer to the trial court's finding with regard to the truthfulness of the witnesses and find that Wife's alleged condonation is not a defense to Husband's adultery.

Husband's fourth issue addresses whether the trial court erred in granting Wife alimony *in futuro*. Husband asserts that rehabilitative alimony would be a more appropriate award given the fact that Wife has earned a degree and a teaching certificate. Husband contends that parties contemplated that Wife would have a career outside of the home, and that the parties retired her student loan during the marriage. On appeal, Husband asks that the trial court's award of alimony *in futuro* of $2,500.00 per month be reversed and short-term rehabilitative alimony be awarded.

Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101 (d) (Supp. 1997). The trial court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn. Ct. App. 1997); *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). Although there is no absolute formula for determining an award of alimony, the need of the spouse seeking support is one of the more important factors. The obligor spouse's ability to pay is also a factor to consider, *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), as well as fault of the obligor spouse in the termination of the marriage. *Gilliam v. Gilliam,* 776 S.W.2d at 86.

Tennessee courts have shown a preference for rehabilitative alimony over other types of alimony because one goal is to ultimately sever the ties between the parties so they will no longer be dependent upon one another and can "be relieved of the impediments incident to the dissolved marriage...." *Herrera v. Herrera,* 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996) (citing *Self v. Self*, 861 S.W.2d 360, 361 (Tenn.1993)). A spouse who is economically disadvantaged, as compared to the other spouse, should be rehabilitated wherever possible, by an award of rehabilitative, temporary alimony. T.C.A. § 36-5-101(d)(1). According to the statute, alimony *in futuro* should be awarded

where there is relative economic disadvantage between the parties and rehabilitation of the less fortunate spouse is not feasible. *Self,* 861 S.W.2d at 361.

In *York v. York,* No. 01-A-01-9104-CV00131, 1992 WL 181710(Tenn. Ct. App. July 31, 1992), the Middle Section of the Tennessee Court of Appeals affirmed the lower court's award of rehabilitative alimony in a divorce action involving facts similar to those in the case at bar stating that "Tenn. Code Ann. § 36-5-101(d) embodies a policy favoring rehabilitative support for economically disadvantaged spouses." *Id.* at *6. In *York,* the parties had been married twenty-six years and had three minor children. The husband was a doctor who completed his medical training while the wife worked as a school teacher. Like Ms. Blankenship, Ms. York stopped teaching after her first child was born and remained at home until the time of the divorce. Ms. York, forty-four years old at the time of trial, was awarded a divorce on the grounds of cruel and inhuman treatment and adultery. She was also awarded sole custody of the three children and Dr. York was directed to pay $1,250 per month alimony for seventy-two months and $90,000.00 to defray legal expenses.

In the instant case, the trial court made the requisite finding for an award of alimony *in futuro*, stating that there was an economic disadvantage and that rehabilitation of Wife is not feasible. The record reveals that Wife was 34 years old at the time of trial. She has earned a BA degree and a teaching certificate, and worked as a teacher before the parties' children where born. We recognize that the Wife must return for some additional training to earn a teaching certificate in Tennessee, and that her earning capacity as a teacher is far below that of Dr. Blankenship, still, we do not agree with the trial court that Wife cannot be rehabilitated. Wife should be allowed to remain at home until the youngest child, two years old at the time of the trial, is established in school. In addition, Wife should be provided with temporary support to allow her time to gain further training, making her more marketable in the work force as a teacher or in another profession of her choosing. Wife also needs time and support while adjusting to a standard of living below what she was accustomed to during the marriage to Dr. Blankenship. *See York,* at *6. Accordingly, we modify the award of the trial court awarding Wife alimony *in futuro* of $2,500.00 per month and award Wife $2,500.00 per month rehabilitative alimony for ten years. In so holding, we note the finding of our Supreme Court that "[o]nce awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. If rehabilitation is not feasible, the trial court may then make an award of alimony *in futuro.*" *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000).

In his fifth issue, Husband argues that the trial court erred in its division of the marital assets and debts. Husband contends that Wife was awarded the house, her vehicle, and the lion's share of the personal property, while Husband was awarded his vehicle and a small amount of personal property and all of the debts, including the tax debt, although it was clearly marital. On Appeal, Husband submits that the Wife should be required to pay one-half of the marital debts including the outstanding taxes incurred during the marriage.

With regard to the division of the marital estate the Court in *King v. King,* 986 S.W.2d 216, (Tenn. Ct. App. 1998) stated:

We recognize that the division made by the trial court is not entirely equal division. It is well-settled, however, that:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn.1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. Marital debts should, where possible, follow their associated assets, *Mondelli v. Howard,* 780 S.W.2d 769, 773 (Tenn.App.1989), and should be apportioned by considering the reason for the debt, the party who benefitted from the debt, and the party better able to assume the debt. *Mahaffey v. Mahaffey,* 775 S.W.2d [618] at 624. In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.App.1990).

*Id.* at 219 (quoting *Roseberry v. Roseberry,* No. 03A01-9706-CH-00237, 1998 WL 47944 (Tenn.Ct. App. Feb. 9, 1998) (citations omitted)).

While we agree with Husband that the debt owed to the Internal Revenue Service is marital debt, upon a consideration of the factors enumerated in T.C.A. § 36-4-121, we find that the trial court's division of the marital estate meets the criteria referred to by the *King* Court. Wife is in need of the marital home and the larger vehicle as she has custody of the four minor children. The tax debt was incurred while Husband was the sole bread winner for the parties and their children, therefore, he is responsible for taxes on his income earned during the marriage. In addition, Husband has the ability to pay the debt, while Wife would be required draw from funds awarded for her support and the support of the children in repaying the debt. In the division of assets and debts, the trial court is affirmed.

Finally we address the award of attorneys fees. An award of attorney fees is the equivalent of alimony *in solido*. *Herrera v. Herrera,* 944 S.W.2d at 390; *Cranford v. Cranford*, 772 S.W.2d at 52. The decision whether or not to award attorneys fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *see* Rule 13(d) Tenn. R. App. P. In deciding whether to award attorneys fees, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d).

Where the court awards the wife enough alimony *in solido* to meet her needs and attorneys fees, it may not be proper for the trial court to make an additional award of alimony *in solido* for payment of the wife's attorneys fees. ***Umstot v. Umstot,*** 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); ***and Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). Awards of attorneys fees are appropriate, however, when the spouse seeking them lacks adequate funds to pay his or her own legal expenses, ***Houghland v. Houghland,*** 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); ***Ingram v. Ingram,*** 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986), or would be required to deplete his or her resources in paying these expenses. ***See Brown v. Brown,*** 913 S.W.2d 163, 170.(Tenn. Ct. App. 1994). Where one party has been awarded additional funds for maintenance and support and such funds are intended to provide the party with future income, the party need not be required to pay legal expenses by using funds awarded to provide for future support. ***Batson v. Batson***, 769 S.W. 2d 849, 862 (Tenn. Ct. App. 1988). Thus, where the wife has demonstrated that she is unable to pay counsel, and where the husband has the ability to pay, the court may order the husband to pay the wife's attorneys fees. ***Harwell v. Harwell,*** 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer,*** 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***and Ligon v. Ligon,*** 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

Husband contends that he has paid $3,000.00 of Wife's attorneys fees which were included in funds that Wife stole from his pay check and $1,500.00 of Wife's attorney fees pursuant to a pendente lite order. However, we find that the previous payment of Wife's attorneys fees by Husband did not preclude the trial court from requiring him to pay additional funds towards Wife's attorneys fees. Wife's award of support was determined based on her monthly expenses. Requiring her to bear the additional burden of attorneys fees would deplete funds intended for her future support and rehabilitation. Evidence does not preponderate against the trial court's award of attorneys fees to Wife, therefore we find that the trial court did not err in awarding Wife attorneys fees.

In sum, the order holding Husband in contempt is vacated. If the trial court's order is construed in any manner to confiscate Husband's firearms, it is vacated, and Husband's property shall be returned to him forthwith by the Williamson County Sheriff's Department. The trial court's decree is modified by deleting the award of alimony *in futuro* and awarding Wife $2,500 per month rehabilitative alimony for ten years. The decree is in all other respects affirmed. Each party shall be responsible for their attorneys' fees on appeal. Costs of the appeal are assessed to appellant, Carl Scott Blankenship, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.